# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICIO VELASQUEZ,<br><br>       Plaintiff,<br><br>    v.<br><br>CONSTELLATION BRANDS US<br>OPERATIONS, INC., et al.,<br><br>       Defendants. | Case No. 1:18-cv-00364-SAB<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 18) |

Currently before the Court is Defendants Constellation Brands U.S. Operations, Inc.'s ("Constellation US"), and Constellation Brands, Inc.'s ("Constellation Brands") (collectively "Defendants" or "Constellation"), motion for summary judgment or partial summary judgment against Plaintiff Mauricio Velasquez ("Velasquez" or "Plaintiff"). Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following order awarding summary judgment in favor of Defendants on all claims.

///

///

///

///

///

# I.

# BACKGROUND

Defendants' operated a winery under the name of Mission Bell Winery in the County of Madera, California. (Compl., ECF No. 1.) Plaintiff worked at Defendants' winery from 1999 until his termination in December of 2016. (Compl. at 10-11.)[1] Following termination, on February 8, 2018, Plaintiff commenced this action by filing a complaint in the Superior Court of California, County of Madera, bearing Case No. MCV76854. (ECF No. 1 at 5.) Plaintiff brought causes of action for: (1) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code Section 12940; (2) retaliation for taking protected leave under the California Family Rights Act ("CFRA"), California Government Code Section 12945.2(1); (3) retaliation for requesting accommodation under the FEHA, California Government Code Section 12940; and (4) declaratory relief as to the issue of whether Plaintiff was subjected to adverse treatment and an adverse employment action in violation of the FEHA and the CFRA. (Compl. at 9-17.)

On March 13, 2018, Defendants filed an answer to Plaintiff's complaint in the California Superior Court. (ECF No. 1 at 21.) On March 15, 2018, Defendants removed this action to this Court, the U.S. District Court for the Eastern District of California, claiming the action is proper for removal due to the diversity of citizenship between Plaintiff and Defendants. (ECF No. 1 at 1.)

On May 8, 2019, Defendants filed the instant motion for summary judgment or partial summary judgment against Plaintiff. (ECF No. 18.) On May 29, 2019, Plaintiff filed an opposition to Defendants' motion for summary judgment. (ECF No. 21.) On June 5, 2019, Defendants filed a reply to Plaintiff's opposition, as well as a reply to Plaintiff's response to Defendants' separate statement of undisputed facts, a reply to Plaintiff's separate statement of undisputed facts, and evidentiary objections to Plaintiff's evidence submitted in his opposition. (ECF Nos. 22, 23, 24, 25.)

---

[1] All references herein to pagination of electronically filed documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

The Court found Defendants' motion for summary judgment suitable for decision without oral argument pursuant to Local Rule 230(g), and on June 11, 2019, the Court issued an order vacating the scheduled hearing on the motion for summary judgment. (ECF No. 26.)

## II.

## SUMMARY JUDGMENT LEGAL STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

"In judging the evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence," Soremekun v. Thrifty Payless, Inc.,

509 F.3d 978, 984 (9th Cir. 2007) (citation omitted), and it "must draw all reasonable inferences in favor of the non-moving party, and determine whether a genuine issue of material fact precludes entry of summary judgment," Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (citations omitted).

## III.

## UNDISPUTED FACTS AND EVIDENTIARY OBJECTIONS

The Court will now identify those facts submitted by the parties which are undisputed for the purposes of this motion. Facts identified by "JUMF" are those submitted in the joint statement attached to Defendants' motion for summary judgment. (ECF No. 18-2.) Facts identified by "DUMF" are those submitted in Defendants' separate statement of undisputed facts which are undisputed by Plaintiff. (ECF No. 24.) Facts identified by "PUMF" are those submitted in Plaintiff's separate statement of undisputed facts which are undisputed by Defendants. (ECF No. 25.) If necessary to the adjudication of the motion, the Court will examine any additional disputed facts and determine if any can be considered undisputed based on the parties' proffers, whether any genuine material disputes preclude summary judgment, and incorporate such facts into the discussion and analysis throughout this opinion.

### A.     The Undisputed Facts Submitted by the Parties

During his employment by Constellation, Plaintiff Mauricio Velasquez was a member of a union and, to the extent set forth in the Collective Bargaining Agreement ("CBA"), the terms of his employment were governed by a CBA. (JUMF 1; Dep. of Pl. Maurice Velasquez ("Pl. Dep."), 19:14-16, 20:2-7, 23:25-24:6.) Plaintiff received a copy of Constellation's Handbook, Code of Conduct, the CBA and Constellation's written Attendance Policy. (JUMF 2; Pl. Dep. 19:24-20:9, 111:18-23, Ex. 26 (the "Attendance Policy").)

During his employment by Constellation, Plaintiff knew Constellation policy prohibited harassment and discrimination based on disability. (JUMF 3; Pl. Dep. 20:25-21:9.) During his employment by Constellation, Plaintiff knew that, according to the Attendance Policy, attendance infractions would lead to discipline; up to eight attendance infractions would result in a written warning and nine unexcused absences or "occurrences" could result in termination.

(JUMF 4; Pl. Dep. 21:22-22:24, 112:8-24, 118:18-23, Ex. 26; Decl. Roman Noriega ("Noriega Decl.") ¶ 4, ECF No. 18-4.) During his employment by Constellation, Plaintiff was aware that failing to give 30-minutes notice of an absence (a "Failure to Notify") was another basis for discipline and that three Failure to Notify offenses could also result in termination. (JUMF 5; Pl. Dep. 112:8-24, Ex. 26; Dep. of Roman Noriega as PMQ of Constellation ("PMQ Dep."), 33:19-35:10, Ex. 6.) The company PMQ testified it has discretion not to write someone up for a "failure to notify," and will review the situation on a "case-by-case basis." (PUMF 2; PMQ Dep. 34:12-35:14, 112:12-113:8.) During his employment by Constellation, Plaintiff was aware that attendance infractions were counted on a rolling 12-month basis, and that he could avoid discipline by keeping his attendance infractions below the policy thresholds. (JUMF 6; Pl. Dep. 41:22-42:4.) The CBA applicable to Plaintiff's employment by Constellation states that the first instance of falsifying a company record will result in dismissal and the fourth instance of "chronic absenteeism" will result in dismissal. (JUMF 7; PMQ Dep. 50:1-51:13, Ex. 8; Noriega Decl. ¶ 4.)

Prior to becoming eligible for intermittent Family Medical Leave Act ("FMLA") leave in September 2015, Plaintiff was absent from work for reasons that were not FMLA-protected, including his alcohol use. (DUMF 5; Pl. Dep. 34:17-35:7, 35:21-37:4, 97:8-99:12, 100:14-101:3, 102:21-103:16, 106:16-108:11, 207:14-19.) Effective September 1, 2015, Plaintiff was eligible for up to four days per month of Family Medical Leave Act/California Family Medical Leave Act leave for absences caused by the FMLA qualifying reason of his diabetes. (JUMF 8; Pl. Dep. 32:18-33:5, 72:11-21; PMQ Dep. 27:10-28:6, Ex. 2.) During 2015 and 2016, Plaintiff was aware that, if he was unable to work for a legitimate FMLA qualifying reason, he had to notify: (1) Constellation of the absence; and (2) report to third-party administrator Liberty Mutual that the absence was FMLA-protected. (JUMF 9; Pl. Dep. 66:16-67:9, 70:13-71:1; PMQ Dep. 30:15-31:9.) After becoming eligible for intermittent FMLA leave in September 2015, Plaintiff was absent from work for reasons, including illness and his alcohol use. (DUMF 6; Pl. Dep. 98:9-18, 98:23-99:12, 100:14-101:3, 102:21-103:16, 106:16-108:11.) Plaintiff did not inform Constellation that he suffered from alcoholism or depression. (JUMF 10; Pl. Dep. 91:11-

17.)

Plaintiff was issued a DAR dated August 12, 2015, which included infractions for absences that occurred on 8/4/2015 and 8/5/2015. (PUMF 4.)[2]  After the issuance of the DAR, CFRA/FMLA was later requested and approved for the dates of 8/4/15 and 8/15/15. (PUMF 4.) Plaintiff was issued a DAR dated August 12, 2015, which included infractions for absences that occurred on 8/4/2015, 8/5/2015, 8/10/2015, and 8/11/2015. (PUMF 5.) After the issuance of the DAR, CFRA/FMLA was later requested and approved for the dates of 8/4/15, 8/15/15, 8/10/15, and 8/11/2015. (PUMF 5.) An August 12, 2015 DAR is referenced in Plaintiff's termination document under the section related to previous discipline. (PUMF 5.)

Plaintiff was issued a DAR dated August 23, 2016, that included infractions for absences that occurred on 8/10/2016, 8/12/16, and 8/22/16. (PUMF 6.) Under employee comments, a handwritten note says "FMLA Pending". (PUMF 6.) After the issuance of the DAR, CFRA/FMLA was later requested and approved for the dates of 8/10/16, 8/12/16, and 8/22/16. (PUMF 6.) An August 23, 2016 DAR is referenced in Plaintiff's termination document under the section related to previous discipline. (PUMF 6.) The DAR also references the previous DAR issued 8/18/16. (PUMF 6.)

Plaintiff was issued a DAR dated August 23, 2016 related to a "Failure To Notify" for 8/22/16. (PUMF 7.) Under employee comments, there is a handwritten comment that says "FMLA Pending." (PUMF 7.) CFRA/FMLA was later requested and approved for the date of 8/22/16. (PUMF 7.) An August 23, 2016 DAR is referenced in Plaintiff's termination document under the section related to previous discipline. (PUMF 7.)

Plaintiff was issued a DAR dated August 24, 2016, that included infractions for absences that occurred on 8/10/2016, 8/12/16, 8/22/16, 8/24/16, and 8/25/16. (PUMF 8.) Under employee comments, is a handwritten comment that says "FMLA Pending". (PUMF 8.) CFRA/FMLA

---

[2] PUMF 4-12 refer to the disciplinary action reports ("DAR(s)") issued to Plaintiff between August of 2015 and the time of Plaintiff's termination on December 2, 2016. The Court outlines and addresses these DARs in detail infra Section IV(C)(3), however for purposes of the undisputed facts described here, the Court modifies Plaintiff's statements to reflect a more neutral statement of what the DARs represent in relation to Defendants' response to Plaintiff's separate statement of undisputed facts, and reserves more in depth analysis of such facts until the Court's discussion on Plaintiff's CFRA retaliation claim in Section IV(C)(3) of this order.

was later requested and approved for the dates of 8/10/16, 8/12/16, 8/22/16, 8/24/16, and 8/25/18. (PUMF 8.) An August 23, 2016 DAR is referenced in Plaintiff's termination document under the section related to previous discipline. (PUMF 8.) The DAR also references the 8/18/16 and 8/22/16 DARs. (PUMF 8.)

Plaintiff was issued a DAR dated August 26, 2016 related to a "Failure To Notify" for 8/24/16. (PUMF 9.) Under employee comments, there is a handwritten comment that says "FMLA Pending". (PUMF 9.) CFRA/FMLA was later approved for the date of 8/24/16. (PUMF 9.) An August 26, 2016 DAR is referenced in Plaintiff's termination document under the section related to previous discipline. (PUMF 9.) The DAR also references the 8/18/16 and 8/22/16 DARs. (PUMF 9.) On Friday August 26, 2016, Plaintiff received DAR notices for: (1) six attendance infractions between April 2016 and August 2016, including August 10-12, 2016; (2) attendance infractions, including August 22, 2016; (3) a Failure To Notify for August 22, 2016; (4) attendance infractions, including for August 24-25, 2016; and (5) a Failure To Notify for August 26, 2016 for not calling in until 12 minutes before his shift. (JUMF 11; PMQ Dep. 77:20-78:4, Ex. 15, 79:18-25, Ex. 16, 80:20-81:7, Ex. 17, 81:18-25, Ex. 18, 83:15-84:2, Ex. 19.)

According to documentation provided by Liberty Mutual to Constellation, on Monday, August 29, 2016, Plaintiff called Liberty and asked to designate August 10, 12, 22, 24 and 25 as FMLA-protected. (DUMF 7; PMQ Dep. 75:2-77:7, 123:23-124:5, Ex. 14.)

On September 27, 2016, Plaintiff was issued a DAR for leaving work early without telling his supervisor, but Plaintiff was not given an attendance infraction for September 27, 2016 and Plaintiff's absences on August 10, 12, 22, 24 and 25 were not listed as infractions on the September 28, 2016 DAR. (DUMF 8; PUMF 10; PMQ Dep. 86:13-21, Ex. 20.) CFRA/FMLA was approved for the date of 9/27/16. (PUMF 10.) A September 27, 2016 DAR is referenced in Plaintiff's termination document under the section related to previous discipline. (PUMF 10.)

Plaintiff was scheduled to work at 11:45 p.m. on Saturday November 26, 2016 but did not call in 30 minutes before his shift, resulting in a Failure to Notify. (DUMF 9; Constellation Dep. 87:12-88:12, Ex. 21.) Plaintiff was issued a DAR dated November 28, 2016 related to the

"failure to notify management that he was leaving" on 11/26/16. (PUMF 11.) CFRA/FMLA was approved for the date of 11/26/16. (PUMF 11.) A November 29, 2016 DAR references the DAR issued 8/23/16 and 8/24/16. (PUMF 11.) Plaintiff's termination document references this November 28, 2016 DAR. (PUMF 11.)

When Plaintiff completed a chiller log as part of his work duties, Plaintiff circles the numbers of certain chillers to document that those chillers were "running, that they are in operation." (DUMF 10; Pl. Dep. 139:14-140:6; Dep. of Kenneth Putnam ("Putnam Dep."), 40:23-41:24.) On November 27, 2016, Plaintiff did not turn on chillers 1, 12, and 19 as documented on the chiller log he turned into Constellation. (DUMF 11; Pl. Dep. 144:1-24, 145:12-25; Putnam Dep. 42:3-16.)

On November 28, 2016, the same date that Plaintiff's foreman told Plaintiff that he had won money in a football pool, Plaintiff left work before the end of his shift. (DUMF 12; Pl. Dep. 115:9-25, 116:1-18, 129:5-25, 130:1-3, 134:15-135:10; Noriega Decl. ¶ 8, Ex. B.) On Tuesday November 29, 2016, Plaintiff received DAR for absences on November 26 and 28, 2016. (JUMF 12; PUMF 12; PMQ Dep. 89:7-16, Ex. 22, 91:14-19, Ex. 23.) CFRA/FMLA was approved for the dates of 11/26/16 and 11/28/16. (PUMF 12.) The November 29, 2016 DAR references the DAR issued 8/24/16. (PUMF 12.) Plaintiff's termination document incorporates the November 29, 2016 DAR. (PUMF 12.)

Roman Noriega ("Noriega") had to personally approve the termination and actually did approve the termination. (PUMF 3; PMQ Dep. 40:2-9.) Noriega testified that himself, Ken Putnam ("Putnam"), and possibly a general manager made the decision to terminate Plaintiff. (PUMF 16; PMQ Dep. 37:25-38:22.) Noriega declared under oath that the only people he recalled being part of the decision were himself and Putnam. (Noriega Decl. ¶ 6.)

Noriega testified that the company relied on the "attendance policy," the "call-off records," and "previous discipline issued for excessive absenteeism problems," as a factor in the termination decision. (PUMF 3; PMQ Dep. 43:24-44:4, 52:13-53:19.) Noriega testified he would have looked at the daily attendance calendar when deciding to terminate Plaintiff. (PUMF 23; PMQ Dep. 73:20-74:15, Ex. 13.) The 2016 calendar confirms several absences protected

under CFRA. (PUMF 24.) Noriega testified it did not consider whether Plaintiff was "abusing" leave under the FMLA. (PUMF 14; PMQ Dep. 37:2-6.) Noriega testified he met Plaintiff two or three times. (PUMF 15; PMQ Dep. 12:19-22.) Noriega testified that he does not recall exactly what information was given to him related to Plaintiff's termination, nor does he recall who gave him the information. (PUMF 17; PMQ Dep. 40:10-41:13.) Noriega claims "he most likely would have" talked to Ken Putnam about the termination, but does not recall enough to testify as to what was talked about. (PUMF 18; PMQ Dep. 41:22-42:9.) Noriega doesn't recall following up with anybody about what was meant that Plaintiff was falsifying information in the chiller log. (PUMF 19; PMQ Dep. 47:9-18.)[3]

Putnam does not recall discussing the termination with either Plaintiff's direct supervisor, Ron Mehlhoff, or Roman Noriega, and does not recall email correspondence or discussions generally regarding the termination. (PUMF 21; Putnam Dep. 10:5-19.) Ron Mehlhoff first learned of Plaintiff's termination at his deposition. (PUMF 22; Mehlhoff Dep. 11:15-24.) Ron Mehlhoff was not consulted on the termination. (PUMF 22; Mehlhoff Dep. 14:18-15:14.) Ron Mehlhoff does not recall talking to anyone about the "chiller log" incident. (PUMF 22; Mehlhoff Dep. 45:18-46:4.)

The Court now turns to the evidentiary objections submitted by Defendants.

**B. Defendants' Evidentiary Objections**

On June 5, 2019, Defendants filed objections to the evidence submitted by Plaintiff in his opposition. (ECF No. 23.) The Court now addresses Defendants' objections.

Objection No. 1 as to foundation for Exhibit 4 to the Migliazzo Declaration is overruled. In reviewing the deposition testimony cited by Plaintiff and the actual document produced, the Court finds the evidence supports the fact that the document is proffered for, that Plaintiff's CFRA/FMLA leave was extended through February 27, 2017, and the Court may consider that fact as established for purposes of this motion. (See PMQ Dep. 28:23-29:15, Ex. 3; JUMF 8.)

Objection Nos. 2 and 3 as to Exhibit 5 to the Migliazzo Declaration are overruled.

---

[3]  In response to PUMF 17-19, Defendants emphasize that Noriega declared that the reasons for Plaintiff's termination were set forth in the DAR dated December 2, 2016. (Noriega Decl. ¶ 8.)

Defendants cite to this same policy in identical form in their joint statement of undisputed facts, and the exhibit was authenticated as the attendance policy in deposition. (See JUMF 2-5, Pl. Dep. 112:8-24, Ex. 26; PMQ Dep. 33:19-35:10, Ex. 6.)

Objections Nos. 6 and 7 to Exhibit 7 of the Migliazzo Declaration are overruled as the document was authenticated at the PMQ deposition as the 2015 Attendance Calendar to the best of the PMQ witness's knowledge, and associated testimony and exhibits further establish the fact. (See PMQ Dep. 54:1-60:11, Ex. 9.) However, Defendants' concerns as to, for example, when the document was modified, are noted by the Court in considering the document for purposes of this motion. Objections Nos. 14 and 15 to Exhibit 11 of the Migliazzo Declaration are similarly overruled, as the document was identified as the 2016 attendance calendar to the best of the PMQ witness's knowledge. (See PMQ Dep. 62:23-64:15, Ex. 13.) The Court will remain cognizant of the parties' dispute concerning the date the calendar was last modified. (See ECF No. 25 at 11.)

Objections Nos. 4 and 5 to Exhibit 6 of the Migliazzo Declaration are overruled as the document was authenticated at the PMQ deposition as disciplinary action report delivered to Plaintiff. (See PMQ Dep. 59:10-18, Ex. 10.) Objections Nos. 8 and 9 to Exhibit 8 of the Migliazzo Declaration are overruled. (See PMQ Dep. 60:13-61:3, Ex. 11.) Objections Nos. 10 and 11 to Exhibit 9 of the Migliazzo Declaration are overruled. (See PMQ Dep. 37:11-24, Ex. 7.) Objections Nos. 12 and 13 to Exhibit 10 of the Migliazzo Declaration are overruled. (See PMQ Dep. 77:24-79:11, Ex. 15.) Objections Nos. 16 and 17 to Exhibit 13 of the Migliazzo Declaration are overruled. (See PMQ Dep. 79:18-80:14, Ex. 16.) Objections Nos. 18 and 19 to Exhibit 14 of the Migliazzo Declaration are overruled. (See PMQ Dep. 80:20-81:13, Ex. 17.) Objections Nos. 20 and 21 to Exhibit 15 of the Migliazzo Declaration are overruled. (See PMQ Dep. 81:18-83:9, Ex. 18.) Objections Nos. 22 and 23 to Exhibit 16 of the Migliazzo Declaration are overruled. (See PMQ Dep. 83: 15-84:10, Ex. 19.) Objections Nos. 24 and 25 to Exhibit 17 of the Migliazzo Declaration are overruled. (See PMQ Dep. 86:13-21, Ex. 20.) Objections Nos. 26 and 27 to Exhibit 18 of the Migliazzo Declaration are overruled. (See PMQ Dep. 87:12-88:16, Ex. 21.) Objections Nos. 28 and 29 to Exhibit 19 of the Migliazzo Declaration are

1    overruled.  (See PMQ Dep. 89:7-91:7, Ex. 22.)  Objections Nos. 30 and 31 to Exhibit 20 of the

2    Migliazzo Declaration are overruled.  (See PMQ Dep. 91:14-92:12, Ex. 23.)

3        Objections Nos. 32, 33, 34 to certain sections of the deposition transcript of Noriega are

4    overruled, however, the Court notes Defendants' concerns regarding the cited testimony, and if

5    relevant to the instant motion, the Court will weigh such considerations when evaluating the

6    testimony in relation to the applicable issue.

7        Objections Nos. 35 through 39 pertain to Plaintiff's declaration submitted with his

8    opposition to the current motion.  As to Plaintiff's testimony that he never used FMLA for an

9    improper purpose, Objection No. 35 is overruled on the basis of being vague and ambiguous,

10   however Objection No. 36 is sustained as to Plaintiff's statement being an improper legal

11   conclusion.  As to Plaintiff's testimony regarding his union being unhelpful, Objection No. 37 on

12   the basis of the testimony being vague and ambiguous is overruled, however Objection No. 38

13   for irrelevancy is sustained.  Objection No. 39 is sustained as to Plaintiff's declaration stating the

14   stress caused his diabetes to become worse, as it is a medical diagnosis that lacks proper

15   foundation.

16                                          **IV.**

17                           **DISCUSSION AND ANALYSIS**

18       Defendants move for summary judgment on each of the following of Plaintiff's claims:

19   (A) Plaintiff's disability discrimination claim; B) Plaintiff's FEHA retaliation claim; (C)

20   Plaintiff's CFRA retaliation claim; (D) Plaintiff's claim for declaratory relief; and (E) Plaintiff's

21   claim for punitive damages.  (Def.'s Mem. P. & A. Supp. Mot. Summ. J. ("Mot.") 2, ECF No.

22   18-1.)  The Court addresses each of the challenges to Plaintiff's claims in turn.

23       **A.        Plaintiff's Disability Discrimination Claim**

24       Discrimination claims under FEHA are analyzed under the three-step burden-shifting

25   framework established by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411

26   U.S. 792, 793 (1973).  See Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir.

27   2013); Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 353 (2000).  Under this framework, at the trial

28   stage, the plaintiff has the initial burden of establishing a prima facie case of discrimination.

1   Lawler, 704 F.3d at 1242.  However, this burden-shifting framework is reversed where, as here,

2   an employer defendant moves for summary judgment.  Id.; Arteaga v. Brink's, Inc., 163

3   Cal.App.4th 327, 344 (2008).  For purposes of this motion, Defendants bear the initial burden of

4   showing that either: (1) Plaintiff cannot establish one of the elements of the FEHA claim; or (2)

5   there was a legitimate, nondiscriminatory reason for the decision to terminate Plaintiff's

6   employment.  See Lawler, 704 F.3d at 1242.  If Defendants meet this initial burden, Plaintiff

7   must then demonstrate that either: (1) Defendants' showing was insufficient; or (2) that there was

8   a triable issue of fact material to the Defendants' showing.  Id.

9        A plaintiff may establish a prima facie case of disability discrimination by showing they:

10  "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform

11  the essential duties of the job with or without reasonable accommodations; and (3) was subjected

12  to an adverse employment action because of the disability or perceived disability."  Sandell v.

13  Taylor-Listug, Inc., 188 Cal.App.4th 297, 310 (2010); see also Holtzclaw v. Certainteed Corp.,

14  795 F. Supp. 2d 996, 1015 (E.D. Cal. 2011).  Phrased differently, the Plaintiff must generally

15  provide evidence that: "(1) he was a member of a protected class, (2) he was qualified for the

16  position he sought or was performing competently in the position he held, (3) he suffered an

17  adverse employment action, such as termination, demotion, or denial of an available job, and (4)

18  some other circumstance suggests discriminatory motive."  Guz v. Bechtel Nat. Inc., 24 Cal.4th

19  317, 355 (2000) ("The specific elements of a prima facie case may vary depending on the

20  particular facts.").  In Harris v. City of Santa Monica, 56 Cal.4th 203, 232 (2013), the California

21  Supreme Court held that a plaintiff alleging discrimination under FEHA must show that

22  discrimination was a "substantial motivating factor" for the adverse employment action, rather

23  than simply a "motivating factor."

24       The Court will now address Defendants' challenge to Plaintiff's prima facie case of

25  disability discrimination.

26       1.    Plaintiff Cannot Establish a Prima Facie Case of Disability Discrimination

27       Defendants do not challenge Plaintiff's evidence that he suffered from a qualifying

28  disability, that he was generally qualified for his position, or that he suffered an adverse

employment action. Defendants argue Plaintiff cannot establish a prima facie case of disability discrimination because neither Cellar Director Kenneth Putnam ("Putnam") nor Human Resources Manager Roman Noriega ("Noriega"), the employees responsible for the decision to terminate Plaintiff, knew that Plaintiff had any alleged disability, and Plaintiff testified that he did not have a disability while he worked at Constellation and needed no accommodation. (Mot. 18.) Alternatively, to the extent the eligibility for FMLA leave creates an inference that Plaintiff was disabled, Defendants argue Plaintiff lacks evidence of a causal connection between such and the adverse employment action. In this regard, Defendants highlight that Plaintiff received discipline for performance and attendance both before and after he was eligible for FMLA leave, and argue there is no temporal proximity with the adverse employment action as he was approved for FMLA leave effective September 1, 2015, and was not terminated until performance problems escalated fifteen months later. (Mot. 19.)

Plaintiff responds that his disability is established as he was seeking CFRA/FMLA leave for his diabetes. (Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Summ. J. ("Opp'n") 26, ECF No. 21.) Plaintiff argues Defendants' claim that the decision-makers were unaware of the disability is not credible, given Noriega had access to and consulted the daily calendar in deciding to terminate (PMQ Dep. 73:20-74:15, Ex. 13), and Noriega had access to the eleven DARs that referenced CFRA-protected absences.

The Court now turns to the facts put forth by the parties on the issue of knowledge of the disability, both disputed and undisputed.

It is undisputed that effective September 1, 2015, Plaintiff was eligible for up to four days per month of FMLA/CFRA leave for absences caused by the qualifying reason of his diabetes. (JUMF 8.) On April 4, 2016, Plaintiff received a letter extending his FMLA/CFRA leave through February 27, 2017 (Constellation PMQ Dep. 28:23-29:12, Ex. 3), and on October 13, 2016, Plaintiff received a letter from Liberty Mutual, updating the allowable intermittent leave to five days per month, and four days per year for treatment. (Pl. Decl. ¶ 6, Ex. 1, ECF No. 21-4.) Plaintiff testified that he became qualified for FMLA leave for his diabetes about a year and a half before he was terminated. (Pl. Dep. 32:18-33:5.)

Defendants emphasize that when asked if he had any disability while he worked at Constellation, Plaintiff answered no.  (Pl. Dep. 31:10-20.)  It is not clear exactly what is meant from this answer though, as when he is asked if he has a disability now, he answers: "Not at this time.  I mean I am on disability -- I do suffer from having to control my sugar and all of that," and then states he had diabetes during the last two years of his employment with Constellation.  (Pl. Dep. 31:21-32:12.)

Defendants proffer that according to Plaintiff, while at work, he needed no accommodation and was not disabled.  (Mot. 18; DUMF 1-2, ECF No. 21-1 at 2.)  Plaintiff responds that he requested reasonable accommodations through his request for CFRA medical leave of absences.  (ECF No. 21-1 at 2.)  Plaintiff was asked in an interrogatory to state all facts relating to any medical restrictions requiring a reasonable accommodation from June 2014 to the present.  (ECF No. 18-9 at 55.)  Plaintiff responded that he could do all parts of his job duties unless he was taking his prescribed medication, and when he takes the medication, he is unable to work at all.  (ECF No. 18-9 at 55.)  During his deposition, Plaintiff stated he did not remember what medication this was, as his doctor gave him several types, but remembers one medication had warnings stating he could not drive while taking such medication.  (Pl. Dep. 165:3-14.)  Plaintiff confirmed in deposition that if the doctor said you cannot work when taking such medication, he would have stayed home when taking, and would have called the sick line at Liberty Mutual.  (Pl. Dep. 166:16-24.)  Plaintiff also testified that after showing up to work on a given day, he didn't recall ever telling a foreman that he took the medication prohibiting him from working but was there regardless, and confirmed that if he showed up, he felt he could finish the day's work.  (Pl. Dep. 167:6-15.)

As for the representatives of the employer that were responsible for the decision to terminate Plaintiff's employment, Putnam testified that he did not discuss anything related to Plaintiff's requests for leave, would not have known if Plaintiff requested FMLA leave during the employment, and that during Plaintiff's employment, Putnam did not have any knowledge that Plaintiff had a disability.  (Putnam Dep. 47:5-24.)  Noriega, in an affidavit, declares that "[a]t no time was I aware that Mauricio Velasquez suffered from any mental of [sic] physical

disability." (Noriega Decl. ¶ 5, ECF No. 18-4, at 2.) Noriega also declares that he only recalls himself and Putnam taking part in the decision to terminate Plaintiff, and states "[n]either his requests for FMLA leave nor any alleged disability was a factor in the termination decision." (Noriega Decl. ¶ 6.)

Based on these facts, Defendants argue that no decision-maker perceived Plaintiff to be disabled or treated him as if he were. (Mot. 18.) To establish the disability claim, "a plaintiff must prove the employer had knowledge of the employee's disability when the adverse employment decision was made." Jackson v. Kaplan Higher Educ., LLC, No. 1:14-CV-00073-AWI, 2015 WL 3655155, at *3–4 (E.D. Cal. June 11, 2015) (quoting Scotch v. Art Inst. of California, 173 Cal.App.4th 986, 1008 (2009); see also Pensinger v. Bowsmith, Inc., 60 Cal.App.4th 709, 712 (1998) ("We conclude that in order to meet the knowledge requirement of the FEHA, an employer must have actual knowledge an employee suffers from a specific disability."); Foster v. City of Oakland, 649 F. Supp. 2d 1008, 1018 (N.D. Cal. 2009) ("a plaintiff must prove that the employer had knowledge of the employee's disability when the adverse employment decision was made."). Generally, the specific individuals who made the decision to terminate Plaintiff must have actual knowledge of the disability when they made the adverse employment decision. See Avila v. Cont'l Airlines, Inc., 165 Cal.App.4th 1237, 1248 (2008) (hereinafter "Avila") (to show employer acted with discriminatory intent, "plaintiff was required to produce evidence that the Continental employees who decided to discharge him knew of his disability."); Gutierrez v. Nor-Cal Ready Mix, Inc., No. A121754, 2009 WL 1362802, at *7-8 (Cal. Ct. App. May 15, 2009) (unpublished) ("Because the FEHA targets intentional discrimination, the actual individuals who made the adverse employment decision must have known about the disability when they made that decision.")

The employee generally bears the burden of giving the employer notice of his disability. Featherstone v. S. California Permanente Med. Grp., 10 Cal.App.5th 1150, 1167 (Ct. App. 2017). "An employee's 'vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the FEHA.' " English v. Estes Express Lines, No. 516CV01353CASSKX, 2017 WL 5633037, at *16 (C.D. Cal. Nov. 21,

2017) (quoting <u>Brundage v. Hahn</u>, 57 Cal.App.4th 228, 237 (1997)).  However, "[i]f an employer disclaims actual knowledge of the employee's condition, an employer can still be found liable for disability discrimination in cases where knowledge of a disability can be inferred."  <u>Lambert v. Nat'l R.R. Passenger Corp.</u>, No. CV 13-08316 DDP MANX, 2015 WL 1967044, at *6 (C.D. Cal. Apr. 29, 2015) (quoting <u>Jadwin v. Cnty. of Kern</u>, 610 F. Supp. 2d 1129, 1179 (E.D. Cal. 2009).  "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the <u>only reasonable interpretation</u> of the known facts."  <u>Jackson v. Kaplan Higher Educ., LLC</u>, No. 1:14-CV-00073-AWI, 2015 WL 3655155, at *3–4 (E.D. Cal. June 11, 2015) (quoting <u>Scotch v. Art Inst. of California</u>, 173 Cal.App.4th 986, 1008 (2009) (emphasis added); <u>English v. Estes Express Lines</u>, No. 516CV01353CASSKX, 2017 WL 5633037, at *16 (C.D. Cal. Nov. 21, 2017) (same); <u>Featherstone v. S. California Permanente Med. Grp.</u>, 10 Cal.App.5th 1150, 1167 (Ct. App. 2017) (same).

It is possible that knowledge of the disability on behalf of biased non-decision-making employees can be imputed to the decision-makers.  For example, "if the supervisors who knew that [the employee] was disabled set the disciplinary process in motion, and they were motivated by animus, that is sufficient to impute the motive to the company."  <u>Lambert v. Nat'l R.R. Passenger Corp.</u>, No. CV 13-08316 DDP MANX, 2015 WL 1967044, at *7 (C.D. Cal. Apr. 29, 2015) (citing <u>Poland v. Chertoff</u>, 494 F.3d 1174, 1182 (9th Cir.2007) (in federal age discrimination case, holding "if a subordinate, in response to a Plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove the allegedly independent adverse employment decision was not actually independent because the biased subordinate influence or was involved in the decision or decisionmaking process.")); <u>Alejandro v. ST Micro Elecs., Inc</u>, 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015) ("A supervisor's knowledge of an employee's disability is imputed to the employer because '[a] supervisor is the employer's agent for purposes of vicarious liability for unlawful discrimination.' ") (quoting <u>California Fair Employment & Hous. Com. v. Gemini Aluminum Corp.</u>, 122 Cal. App. 4th 1004, 1015, 18 Cal.

Rptr. 3d 906, 913 (2004)).

Plaintiff has submitted no evidence demonstrating any knowledge of a disability or perceived disability on the part of any biased supervisors or other employees that can be imputed to Noriega, Putnam or the employer as a whole. Cf. Lambert v. Nat'l R.R. Passenger Corp., No. CV 13-08316 DDP MANX, 2015 WL 1967044, at *7 (C.D. Cal. Apr. 29, 2015) ("A rational jury could therefore conclude that the decision-makers at Amtrak either had direct knowledge of Plaintiff's disability or disciplined her in a process set in motion by or influenced by supervisors who had knowledge.") Plaintiff only submits evidence that because he took protected leave, and because the protected leave was referenced on disciplinary records and on a calendar that a decision-maker had access to when making the termination decision, his disability was known. The facts of Brundage, widely cited for its analysis of knowledge, are instructive in this regard:

> Brundage attempted to create a triable issue of fact of County's imputed knowledge by demonstrating that County employees knew she had taken a substantial amount of leave for medical appointments. Brundage submitted copies of her leave requests for medical appointments. None of the documents even hinted at any mental disability. This evidence is therefore insufficient to impute knowledge to County of Brundage's manic-depressive disorder. Nor did Brundage claim that she directly informed any County employee of her disability. As such, there is no triable issue of fact as to County's actual or imputed knowledge. Because County did not know about Brundage's manic-depressive disorder, it could not have terminated her because of that disorder.

Brundage v. Hahn, 57 Cal.App.4th 228, 237 (1997). Here, Plaintiff attempts to create a triable issue given the fact that the calendar references FMLA leave, and that the DARs referenced FMLA leave. However, taking leave under the FMLA does not necessarily mean Plaintiff is disabled, and like in Brundage, none of the documents that Plaintiff contends that Noriega and Putnam had access to referenced a specific medical condition, let alone contained enough information to extrapolate that Plaintiff was suffering from a disability. (PMQ Dep., Exs. 7, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23.)

The parties provided no direct authority on the issue of whether knowledge of protected leave status may impute knowledge of a disability on the part of the employer. The Court was not able to locate authority under California law or the Ninth Circuit which pointedly addresses this issue, but some authority alludes to such considerations or related factors. See Featherstone

v. S. California Permanente Med. Grp., 10 Cal.App.5th 1150, 1167 (Ct. App. 2017) (finding no evidence of actual or constructive knowledge of temporary disability, noting employee returned from "medical leave without any restrictions," and nothing in the work status reports submitted "during her medical leave disclosed any information about her medical condition or prescribed medications."); Martinez v. Taco Bell Corp., No. G052170, 2018 WL 1633511, at *7 (Cal. Ct. App. Apr. 5, 2018) (unpublished) ("Evidence that Taco Bell granted all of her requests for time off work and that the third party administrator granted her request for benefits during her lengthy leaves of absence, does not establish Taco Bell's knowledge that Martinez had a disability under FEHA. Martinez does not cite evidence showing the third party administrator's criteria for determining whether to grant such benefits, much less how those criteria align with FEHA's definition of disability. The record does not support a finding Gallegos, or any other decision maker at Taco Bell, regarded Martinez as disabled within the meaning of FEHA.").

Other courts have found FMLA leave requests, in the context of ADA[4] discrimination or FMLA retaliation, do not in of themselves impute knowledge of a disability to the employer. See Nilles v. Givaudan Flavors Corp., 521 F. App'x 364, 367 (6th Cir. 2013) (affirming district court's grant of summary judgment where plaintiff had taken FMLA leave, finding plaintiff had failed to show that the sole decision-maker had any knowledge of plaintiff's disability and thus could not establish prima facie case of disability discrimination under the ADA, in addition to failing to demonstrate a causal connection between taking FMLA leave and termination, thus could not state a prima facie case of FMLA retaliation); Guasch v. Carnival Corp., 723 F. App'x 954, 957–58 (11th Cir. 2018) (holding district court properly granted summary judgment on FMLA retaliation or interference claim because Plaintiff could not demonstrate causal connection between leave requests and termination, noting plaintiff conceded in deposition that no supervisors were aware of disability, despite requests for FMLA leave). The court's analysis in Chapman v. UPMC is persuasive on the issues presented here:

---

[4] The Court notes that "[b]ecause the FEHA provisions relating to disability discrimination are, in fact, based on the ADA and other federal law, decisions interpreting federal antidiscrimination laws are relevant in interpreting the FEHA's similar provisions." Brundage v. Hahn, 57 Cal.App.4th 228, 235 (1997) ("We therefore consider Brundage's state and federal disability discrimination claims together, and rely on federal authority in the absence of controlling state law.").

Plaintiff argues that UPMC knew about her disability because it had knowledge that she needed intermittent FMLA leave. This court is not persuaded by that argument. The mere fact that an employee, like plaintiff, requires intermittent FMLA leave for a serious health condition does not mean that the employer is automatically on notice that the employee is "disabled" as that term is defined under the ADA and hence under the Rehab Act and that the employer needs to engage in the interactive process. If the court were to reach the conclusion sought by plaintiff, virtually every request for FMLA leave for a serious health condition would trigger an employer's duty to engage in the interactive process. Indeed, plaintiff cited no caselaw or statutory support for the suggestion that when an employee qualifies for intermittent FMLA leave, the employee automatically puts the employer on notice that the employee is disabled for the purposes of the Rehab Act or the ADA. Failure to find any support for this argument is not surprising because the standards for determining whether a serious health condition exists for purposes of the FMLA are not the same as determining whether a person is disabled for purposes of the ADA or the Rehab Act.

Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 532–33 (W.D. Pa. 2007) (footnotes omitted); see also Atwood v. PCC Structurals, Inc., No. 3:14-CV-00021-HZ, 2015 WL 3606323, at *11 (D. Or. June 4, 2015) ("Just because an employee, like Plaintiff, requires intermittent FMLA leave for a serious health condition does not mean that the employer is automatically on notice that the employee is 'disabled' as that term is defined under the ADA.").

Finally, the Court notes that in relation to his CFRA retaliation claim, Plaintiff argues at length the circumstances here are "remarkably similar" to those in Avila v. Cont'l Airlines, Inc., 165 Cal.App.4th 1237 (2008). (Opp'n 18-23.) The Court discusses Avila in greater detail below in relation to the CFRA retaliation claim, infra Section IV(C), however the Avila court's decision is also instructive as to Plaintiff's disability discrimination claim. In Avila, the plaintiff had submitted two medical forms to his employer documenting his absences; the first provided that plaintiff had visited a medical center and was unable to work for one day, and the second form provided that plaintiff had been admitted to the hospital for a few days and would be unable to work for five days. Avila, 165 Cal.App.4th at 1244. The forms did not specify the reason for plaintiff's hospitalization and did not specify any restriction relating to plaintiff's ability to work after the five-day period. Id. at 1249. Only after his termination did plaintiff tell his employer the hospitalization was related to pancreatitis. Id. at 1244. The Court upheld the trial court's grant of summary judgment on plaintiff's FEHA disability discrimination claim, finding that the

medical forms submitted by plaintiff were insufficient to put the employer on notice that plaintiff suffered from a disability.  Id. at 1249-1252.  Like Avila, Plaintiff here has provided no evidence demonstrating that he provided the employer with anything that specified the reason for any of his protected absences.  See also English v. Estes Express Lines, No. 516CV01353CASSKX, 2017 WL 5633037, at *16–17 (C.D. Cal. Nov. 21, 2017) (granting summary judgment on plaintiff's disability discrimination claim finding that similar to Avila, employee's submission of medical forms did not contain sufficient information to put the employer on notice that they suffered from a disability).

For all of the above reasons, Defendants have demonstrated that Plaintiff cannot establish a prima facie case of disability discrimination, and on this basis, the Court grants Defendants' motion for summary judgment on Plaintiff's disability discrimination claim.  Given this holding, it is not necessary to determine whether Defendants' have put forth a legitimate non-discriminatory reason for the termination.  Nonetheless, as the Court finds in the next subsection, Defendants have also demonstrated a legitimate non-discriminatory reason for the termination.  Thus even if knowledge of the disability could be imputed to Noriega, Putnam, or the employer as a whole, Plaintiff's disability discrimination claim fails for this additional and independent reason as explained below.

2.     Defendants Present Legitimate Non-Discriminatory Reasons for Termination

Even if Plaintiff could establish a prima facie case of disability discrimination, Defendants argue that after Plaintiff became eligible for FMLA leave, Plaintiff continued to be absent for unprotected reasons and repeatedly violated the absence notification requirements of the collective bargaining agreement.  (DUMF 6, 9.)  Defendants also note an incident with the wine chillers alleging Plaintiff falsely claimed to have turned them on and falsified records, as noted in the termination disciplinary action report.  (DUMF 10-11.)  Defendants also note an incident where Plaintiff admitted after winning the football pool, he decided to go home because he "did not feel well."  (DUMF 12.)  Defendants argue under the collective bargaining agreement and company policy, these are terminable offenses and thus legitimate reasons for the adverse employment action.  (JUMF 5, 7.)

Legitimate reasons under this standard are "reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 358, 8 P.3d 1089 (2000) (emphasis omitted). The employer "need not persuade the court that it was actually motivated by the proffered reasons." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)); see also Muzquiz v. City of Emeryville, 79 Cal.App.4th 1106, 1117 (2000). However, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the" adverse employment action. Burdine, 450 U.S. at 255 (1981)).

The Court finds that Defendants have presented sufficient admissible evidence of legitimate non-discriminatory reasons for terminating Plaintiff's employment as documented in the DAR issued terminating Plaintiff's employment ("Termination DAR," PMQ Dep., Ex. 7), and associated evidence. Such reasons include multiple unexcused absences unrelated to protected leave in violation of the excessive absenteeism policy, repeated violation of the company's absence notice requirements, as well as evidence that Plaintiff falsified information on a wine chiller form in violation of company policy.[5] See Dumas v. New United Motor Mfg. Inc., No. C 05-4702 PJH, 2007 WL 1223806, at *10 (N.D. Cal. Apr. 24, 2007) ("The court finds that the clear language of the [collective bargaining agreement], of which plaintiff was aware and which he undisputably violated, is a legitimate nonretaliatory reason for plaintiff's termination."), aff'd, 305 F. App'x 445 (9th Cir. 2008); Lambert v. Nat'l R.R. Passenger Corp., No. CV 13-08316 DDP MANX, 2015 WL 1967044, at *8 (C.D. Cal. Apr. 29, 2015) (finding employer had presented legitimate non-discriminatory reason as "[o]ne of the disciplinary hearings that ultimately resulted in [employee] being terminated was for alleged policy violations . . . well in advance of when Plaintiff sought out medical care for her alleged disability . . . [a]dditionally, Plaintiff's long history of being disciplined for minor violations could suggest that the company had presented her with plenty of opportunities to shape up before finally

---

[5] The Court discusses these reasons for Plaintiff's termination, as outlined and described in the Termination DAR and other DARs issued prior to termination in greater detail below, infra Section IV(C), where the Court addresses Plaintiff's CFRA retaliation claim.

determining that she should be terminated for failing to adhere to policy."); <u>Galvan v. Costco Wholesale Corp.</u>, No. B250368, 2014 WL 4482162, at *15–16 (Cal. Ct. App. Sept. 12, 2014) (unpublished) (upholding trial court's determination on summary judgment that employer had presented legitimate non-discriminatory reason where Costco stated the decision to terminate was "predicated solely" on the employer's performance, and shown "persistent tardiness, which predated his FMLA leave, disrupted operations at [the warehouse] after his leave," and a "failure to perform key tasks during his shifts," and [a]lthough his supervisors repeatedly met with him to resolve his performance deficiencies, he did not do so.")

Defendants have met their burden of producing admissible evidence demonstrating the disciplinary action reports and termination were based on legitimate nondiscriminatory reasons, and thus the burden now shifts back to Plaintiff to demonstrate such reasons were a pretext for discrimination. <u>See Simms v. DNC Parks & Resorts at Tenaya, Inc.</u>, No. 1:13-CV-2075 SMS, 2015 WL 3912150, at *7 (E.D. Cal. June 25, 2015).

### 3.     <u>Plaintiff has not Demonstrated Discriminatory Motive or Pretext</u>

Defendants demonstrated a legitimate non-discriminatory reason for Plaintiff's termination and the burden now shifts to Plaintiff to offer evidence of the employer's discriminatory motive or demonstrate the reason for the termination was merely a pretext for discrimination. <u>Washington v. California City Correction Ctr.</u>, 871 F. Supp. 2d 1010, 1025–26 (E.D. Cal. 2012); <u>Wills v. Superior Court</u>, 195 Cal.App.4th 143, 160 (2011) (quoting <u>Hersant v. Dep't of Soc. Servs.</u>, 57 Cal.App.4th 997, 1004–05 (1997)) (stating that after an employer proffers a legitimate reason for the adverse action, "an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination."), <u>as modified on denial of reh'g</u> (May 12, 2011). "[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and

uncontroverted independent evidence that no discrimination had occurred." Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 362 (2000) (stating summary judgment appropriate "if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.")

Plaintiff argues that Defendants cannot claim a legitimate non-discriminatory reason for termination because Plaintiff's protected absences for his diabetes were the grounds for the issuance of the DARs, suspensions, and termination, and Defendants' actions were in direct violation of the CFRA. Defendants argue the evidence demonstrates good faith reasons for the DARs issued, including a pattern of absences around holidays and weekends, admitted unexcused absences due to alcohol in 2015 and 2016, admitted reporting to work hung over, admitted paperwork errors, an admission that Plaintiff failed to turn on several chillers the night of November 27, 2016, the fact that on November 28, 2016, he went home early after he won the football pool, and did not grieve any DAR or his termination. (Mot. 20.)

Pretext "may be demonstrated by showing that the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge." Hanson v. Lucky Stores, Inc., 74 Cal.App.4th 215, 224, (1999) (internal citations and quotation marks omitted). It is true that direct evidence of pretext is not necessary and can be inferred from circumstantial evidence. For example, "[p]retext may be inferred from the timing of the discharge decision, the identity of the decision-maker, or by the discharged employee's job performance before termination." Hanson v. Lucky Stores, Inc., 74 Cal.App.4th 215, 224, (1999) (internal citations and quotation marks omitted). However, "[w]hen evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." Washington v. California City Correction Ctr., 871 F. Supp. 2d 1010, 1026 (E.D. Cal. 2012) (quoting Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011)).

Plaintiff has failed to provide sufficient evidence supporting a rational inference that discrimination based on a disability or perceived disability played any role in the decision to terminate Plaintiff. Plaintiff cannot meet his burden by simply averring to the references of

protected leave in the DARs to then extrapolate that the decision-makers in fact knew Plaintiff was disabled, and then extrapolate that the decision-makers were motivated by discriminatory animus.[6]  Plaintiff must offer some sort of substantial evidence that the proffered reasons are "unworthy of credence."  See Serri v. Santa Clara Univ., 226 Cal. App. 4th 830, 863, 172 Cal. Rptr. 3d 732, 760–61 (2014).  As the California Court of Appeal describes, Plaintiff must offer more to defeat the employer's legitimate non-discriminatory reasons:

> [E]vidence that the employer's claimed reason [for the employee's termination] is *false*-such as that it conflicts with other evidence, or appears to have been contrived after the fact—will tend to suggest that the employer seeks to conceal the real reason for its actions, and this in turn may support an inference that the real reason was unlawful. The [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the [the asserted] non-discriminatory reasons. Logically, disbelief of an Employer's stated reason for a termination gives rise to a compelling inference that the Employer had a different, unstated motivation, but it does not, without more, reasonably give rise to an inference that the motivation was a prohibited one.

Serri v. Santa Clara Univ., 226 Cal.App.4th 830, 863 (2014) (alteration and emphasis in original) (internal citations and quotation marks omitted).  Plaintiff has not demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions."  See Id. "Speculation about an employer's motives is not substantial responsive evidence."  Brown v. Constellation Brands, Inc., No. 1:17-CV-00590-BAM, 2018 WL 4849656, at *7 (E.D. Cal. Oct. 4, 2018) (citing Cucuzza v. City of Santa Clara, 104 Cal.App.4th 1031, 1038, 128 Cal.Rptr.2d 660 (2002)).

"If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity," and "[t]he relevant inquiry is whether the [employer] *believed* [the employee] was guilty of the conduct justifying discharge."  Joaquin v. City of Los

---

[6] The DARs leading up to termination, and the Termination DAR are discussed in greater detail, infra Section IV(C), which as a whole, demonstrate discipline and termination were based on legitimate claims of policy violations and substandard performance, not discriminatory or retaliatory animus.

Angeles, 202 Cal.App.4th 1207, 1223 (2012) (quoting Richey v. City of Indep., 540 F.3d 779, 784 (8th Cir. 2008)) (applying analysis to FEHA retaliation claim). "[A] plaintiff seeking to avoid summary judgment under the McDonnel Douglas framework must demonstrate more than a genuine issue of material fact as to whether the employee violated workplace rules," and "must show a genuine issue of fact about whether the employer acted based on an intent to [discriminate] rather than on a good faith belief that the employee violated a workplace rule." Id.

Defendants presented valid evidence demonstrating legitimate reasons for terminating Plaintiff, including excessive unexcused absences, violations of the absence notice policy, as well as undisputed evidence that Plaintiff falsified his work records. Plaintiff has failed to respond with sufficient evidence of pretext or discriminatory animus to refute Defendants' proffered reasons for the discipline or termination "such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." Wills v. Superior Court, 195 Cal.App.4th 143, 160 (2011) (quoting Hersant v. Dep't of Soc. Servs., 57 Cal.App.4th 997, 1004–05 (1997)). Accordingly, in addition to failing to establish a prima facie case of disability discrimination as the Court established above, the Court finds summary judgment in favor of Defendants' on Plaintiff's disability discrimination claim is proper for this additional and independent reason.

The Court now turns to Defendants' motion for summary judgment on Plaintiff's FEHA retaliation claim.

### B. Plaintiff's FEHA Retaliation Claim

Plaintiff brings a cause of action for retaliation under FEHA, California Government Code section 12940, subdivisions (h) & (m)(2), and argues his requests for leave under CFRA/FMLA were for reasonable accommodations for a diabetes disability. (Compl. 14-15.) Defendants move for summary judgment on Plaintiff's FEHA retaliation claim arguing it fails for the same reasons that Plaintiff's disability discrimination claim fails.

Specifically, FEHA makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding

under this part." Cal. Gov't Code § 12940(h); <u>Moore v. Regents of Univ. of California</u>, 248 Cal.App.4th 216, 244 (2016). FEHA has been amended to now make it explicitly unlawful for the employer to "retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted." Cal. Gov't Code § 12940(m)(2); <u>see</u> <u>Moore v. Regents of Univ. of California</u>, 248 Cal.App.4th 216, 245–46 (2016) (holding that the FEHA amendment was prospective in application, and thus Moore could not base FEHA retaliation claim solely on the request for accommodation, because the amendment was not in effect at time of protected activity).

Plaintiff may establish a prima facie case of retaliation by showing: 1) engagement in an activity protected by FEHA; 2) an adverse employment action subsequent to the protected activity; and 3) a causal link between the protected activity and the adverse employment action. <u>Miller v. Dep't of Corr.</u>, 36 Cal.4th 446, 472 (2005); <u>Moore</u>, 248 Cal.App.4th at 244 (internal citation omitted). As with the disability discrimination cause of action, analysis of the FEHA retaliation cause of action proceeds under the <u>McDonnell Douglas</u> burden-shifting framework. <u>See</u> <u>Washington v. California City Correction Ctr.</u>, 871 F. Supp. 2d 1010, 1027 (E.D. Cal. 2012); <u>Navarro v. DHL Glob. Forwarding</u>, No. 215CV05510CASEX, 2017 WL 901880, at *9 (C.D. Cal. Mar. 6, 2017).

It is true, as Plaintiff emphasizes, that "[u]nder the FEHA, a disabled employee is entitled to a reasonable accommodation—which may include leave of no statutorily fixed duration—provided that such accommodation does not impose an undue hardship on the employer." <u>Sanchez v. Swissport, Inc.</u>, 213 Cal.App.4th 1331, 1338 (2013). Given FEHA was only recently amended in 2015 to make it explicitly unlawful an employer to retaliate against an employee requesting a reasonable accommodation, few courts have addressed such claims, with such opinions largely focusing on whether the amendment applies retroactively to past conduct. <u>See</u> <u>Mariscal v. AT&T Mobility Servs.</u>, LLC, No. 117CV00688DADEPG, 2017 WL 5754896, at *4 (E.D. Cal. Nov. 28, 2017) ("State and federal courts to have considered the issue have rejected plaintiff's argument, concluding that § 12940(m)(2) does not apply retroactively."); <u>Moore</u>, 248 Cal.App.4th at 244 (same); <u>Cornell v. Berkeley Tennis Club</u>, 18 Cal.App.5th 908 (Ct. App.

2017) (same).

As found above, supra Section IV(A)(1), Plaintiff failed to establish that he had made the employer aware of any disability through exercising his right to take leave under FMLA/CFRA, which imputed no specific information about any disability. The parties have not pointedly addressed the related question of whether, if given that leave under FMLA/CFRA may be a reasonable accommodation, does any request or exercise of FMLA/CFRA protected leave qualify as a request for a reasonable accommodation due to disability? As discussed previously, the Court does not believe leave under FMLA/CFRA automatically imputes knowledge of a disability to the employer, and for similar reasons, the Court does not believe leave under FMLA/CFRA is a request for a reasonable accommodation due to disability. See Nilles v. Givaudan Flavors Corp., 521 F. App'x 364, 367 (6th Cir. 2013); Guasch v. Carnival Corp., 723 F. App'x 954, 957–58 (11th Cir. 2018); Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 532–33 (W.D. Pa. 2007); Atwood v. PCC Structurals, Inc., No. 3:14-CV-00021-HZ, 2015 WL 3606323, at *11 (D. Or. June 4, 2015).

Without knowledge of the disability, there can be no causal connection between protected activity and any retaliatory actions. See Washington v. California City Correction Ctr., 871 F. Supp. 2d 1010, 1028–29 (E.D. Cal. 2012) ("Under these circumstances, no reasonable trier of fact could conclude Defendant was aware Plaintiff had engaged in protected activity."). For this reason, Plaintiff's FEHA retaliation claim fails. See Martinez v. Taco Bell Corp., No. G052170, 2018 WL 1633511, at *8 (Cal. Ct. App. Apr. 5, 2018) (unpublished) (rejecting FEHA retaliation claim because employee never complained to anyone that she felt harassed due to a disability and "[m]ore importantly, insufficient evidence showed Taco Bell was on notice that she had been diagnosed with . . . any condition that might be a qualified disability under FEHA and that her leaves of absence were taken because of such a disability," and "[c]onsequently, insufficient evidence supported a finding of a causal link, on the one hand, between Taco Bell's decisions to place [the employee] on a [performance improvement plan] and ultimately terminate her employment and, on the other hand, her engaging in protected activity.").

Additionally, and alternatively, even if Plaintiff could establish a prima facie case of

retaliation under FEHA, the Court has established that Defendants have provided a legitimate and non-discriminatory reason for the termination, which given the lack of knowledge of disability on the part of the employer, is clearly unrelated to retaliation based on any disability or perceived disability.  See Joaquin v. City of Los Angeles, 202 Cal.App.4th 1207, 1223 (2012) (quoting Richey v. City of Indep., 540 F.3d 779, 784 (8th Cir. 2008)) (in analysis of FEHA retaliation claim, finding "[i]f the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity," and "[t]he relevant inquiry is whether the [employer] *believed* [the employee] was guilty of the conduct justifying discharge.").

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's FEHA retaliation claim.

### C. Plaintiff's CFRA Retaliation Claim

Plaintiff brings a cause of action for retaliation under the California Family Rights Act arguing disciplinary write-ups and his termination were in retaliation for taking protected leave. (Compl. ¶¶ 28-39.)  Defendants move for summary judgment arguing Plaintiff cannot produce substantial evidence that his use of protected leave was a motivating reason for either the warnings he received or his termination.  (Mot. 21.)

The California Family Rights Act ("CFRA") is contained within FEHA and allows for eligible employees to take up to twelve weeks of unpaid leave in a twelve-month period to care for dependents, or recover from a serious health condition.  Cal. Gov't Code § 12945.2(a); Rogers v. Cty. of Los Angeles, 198 Cal.App.4th 480, 487 (2011).  Under the CFRA, it is unlawful for an employer to "discharge, fine, suspend, expel, or discriminate against, any individual because of . . . [a]n individual's exercise of the right to family care and medical leave provided by" the CFRA.  Cal. Gov't Code § 12945.2(l).  "Violations of the CFRA generally fall into two types of claims: (1) 'interference' claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected medical leave, and (2) 'retaliation' claims in which an employee alleges that she suffered an adverse employment action for exercising her right to CFRA leave."  Rogers, 198 Cal.App.4th at 487–88 (internal citations

omitted).

To establish a prima facie case for retaliation the employee plaintiff must generally show: (1) the employee engaged in protected activity such as taking protected leave; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. Bareno, 7 Cal.App.5th at 560 (citing Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005)). Stated differently, a plaintiff may establish a prima facie case by demonstrating: "(1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a qualifying leave; and (4) the plaintiff suffered an adverse employment action *because he or she exercised the right to take CFRA leave*." Rogers v. Cty. of Los Angeles, 198 Cal.App.4th 480, 491 (2011) (emphasis in original) (citing Dudley v. Dep't of Transp., 90 Cal.App.4th 255, 261 (2001)).

Like the FEHA cause of action, the McDonnell Douglas burden shifting analysis applies to retaliation claims under the CFRA. Chavez v. JPMorgan Chase & Co., 731 F. App'x 592, 595 (9th Cir. 2018) (citing Bareno v. San Diego Cmty. Coll. Dist., 7 Cal.App.5th 546, 560 (Ct. App. 2017)); Moore v. Regents of Univ. of California, 248 Cal.App.4th 216 (2016). On summary judgment, the initial burden falls on the employer, as moving party, to demonstrate that one of the employee's prima facie elements is lacking, or that the adverse employment action was based on legitimate, non-retaliatory factors. Bareno, 7 Cal.App.5th at 561 (citing Arteaga v. Brink's, Inc., 163 Cal.App.4th 327, 344 (2008)).

As noted above, in Harris v. City of Santa Monica, 56 Cal.4th 203, 232 (2013), the California Supreme Court held that a plaintiff alleging discrimination under FEHA must show that discrimination was a "substantial motivating factor" for the adverse employment action, rather than simply a "motivating factor." While the California Supreme Court did not explicitly extend such change to CFRA retaliation claims, following the decision in Harris, the Judicial Council of California Civil Jury Instructions ("CACI") for CFRA retaliation was changed to require that the exercise of the right to leave by Plaintiff be a "substantial motivating reason" for the adverse employment action whereas the instructions previously only required it to be "a motivating reason." See CACI 2620; Simms v. DNC Parks & Resorts at Tenaya, Inc., No. 1:13-

CV-2075 SMS, 2015 WL 3912150, at *13 (E.D. Cal. June 25, 2015); <u>Billal v. Alere Health, LLC</u>, 2015 U.S. Dist. LEXIS 46655, *24, n.2, 2015 WL 1600753 (C.D. Cal. Apr. 9, 2015) (noting that while <u>Harris</u> "held that a plaintiff alleging unlawful discrimination under the FEHA must show that discrimination was a 'substantial motivating factor' for an employment decision . . . California courts have not addressed whether this standard also applies to *retaliation* claims under the CFRA," despite the change to the CACI instruction.); <u>Albrecht v. Regents of Univ. of California</u>, No. G054003, 2018 WL 4042481, at *7 (Cal. Ct. App. Aug. 23, 2018) (unpublished) (stating that the standard applicable to the causation element is the substantial motivating factor standard).

The regulations applicable to FMLA leave are largely applicable to the CFRA: "To the extent that they are within the scope of Government Code section 12945.2 and not inconsistent with this article, other state law, or the California Constitution, the Council incorporates by reference the federal regulations interpreting FMLA that became effective March 8, 2013 (29 C.F.R. Part 825), which govern any FMLA leave that is also a leave under this article." Cal. Code Regs. tit. 2, § 11096.

If the need for leave is foreseeable, such as when based on an expected birth, or planned medical treatment, the employee must provide the employer at least thirty (30) days advance notice before the leave. 29 C.F.R. § 825.302(a). For other cases where such advance notice is not possible, "notice must be given as soon as practicable." <u>Id.</u> "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case," which in cases where not foreseeable to provide thirty (30) days notice, "it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day." 29 C.F.R. § 825.302(b). However, in all cases, such determination "must take into account the individual facts and circumstances." <u>Id.</u>

"An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d). Permissible procedures may include things such as requiring written notice or requiring the employee to call a certain individual or phone number,

and if the employee does not comply, and no unusual circumstances apply, such as the specific number's voicemail being full as one example provided in the regulations, the protected leave may be denied.  Id.  However, the procedures may not require the employee to give notice sooner than the "as soon as practicable" standard described above.  Id.

The California regulations have adopted similar "as soon as practicable" language, however, do not define the clause as specifically as the federal regulations.  See Cal. Code Regs. tit. 2, § 11091(a)(3) ("If 30 days' notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable.").  The California regulations further state that "[a]n employer shall not deny a CFRA leave, the need for which is an emergency or is otherwise unforeseeable, on the basis that the employee did not provide advance notice of the need for the leave, so long as the employee provided notice to the employer as soon as practicable."  Cal. Code Regs. tit. 2, § 11091(a)(4).  "When viewed as a whole, it is clear that CFRA and its implementing regulations envision a scheme in which employees are provided reasonable time within which to request leave for a qualifying purpose, and to provide the supporting certification to demonstrate that the requested leave was, in fact, for a qualifying purpose, particularly when the need for leave is not foreseeable or when circumstances have changed subsequent to an initial request for leave."  Bareno v. San Diego Cmty. Coll. Dist., 7 Cal.App.5th 546, 565 (Ct. App. 2017).

It is true as Plaintiff argues that it is the employer's burden to determine whether an employee's leave is protected.  Avila v. Cont'l Airlines, Inc., 165 Cal.App.4th 1237, 1260–61 (2008) (employer bears "burden to determine whether an employee's leave is protected—that is, to inquire further of the employee if it is necessary to have more information about whether CFRA leave is being sought.") (emphasis added) (internal quotation marks and citations omitted).  However, it is the employee who bears the initial obligations.  It is the employee's "obligation" to "provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA leave."  Cal. Code Regs. tit. 2, § 11091(a)(1).  Though "[t]he employee need not expressly assert rights under CFRA or FMLA, to meet the notice requirement; . . . the

employee must state the reason the leave is needed, such as, for example, . . . medical treatment." Cal. Code Regs. tit. 2, § 11091(a)(1).  The mere mention of a non-covered reason, such as "vacation," "does not render the notice insufficient, <u>provided the underlying reason</u> for the request <u>is CFRA-qualifying</u>, and the employee communicates <u>that reason</u> to the employer." Cal. Code Regs. tit. 2, § 11091(a)(1) (emphasis added).  On the other hand, the employer "<u>should</u> inquire further of the employee <u>if necessary</u> to determine whether the employee is requesting CFRA leave and to obtain necessary information concerning the leave," such as expected duration and commencement date of the leave.  <u>Id.</u> (emphasis added).  In turn, the "employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially CFRA-qualifying," and a "[f]ailure to respond" to such inquiries "may result in denial of CFRA protection if the employer is unable to determine whether the leave is CFRA-qualifying." Cal. Code Regs. tit. 2, § 11091(a)(1) (emphasis added).

"Once an employee has submitted a request for leave under CFRA, the employer is charged with knowledge that the employee's absences pursuant to the leave request are protected, and may not thereafter take adverse employment action against the employee based upon—that is, 'because of'—those protected absences." <u>Avila v. Cont'l Airlines, Inc.</u>, 165 Cal.App.4th 1237, 1260–61 (2008) (internal citations omitted).  "If any of the leaves [an employee] took qualified as CFRA leave, and if [the employer] took any adverse employment action against [the employee] because [the employee] exercised [their] right to take that leave, then [the employee] has established a prima facie case of retaliation in violation of CFRA." <u>Dudley v. Dep't of Transp.</u>, 90 Cal.App.4th 255, 264 (2001).

       1.     <u>Defendants' Absence Notification Policy does not Violate the CFRA</u>

As a preliminary matter, the Court addresses Plaintiff's argument that Defendants' policy requiring employees to notify the employer of an absence within thirty minutes of the beginning of a shift violates the CFRA.  (Opp'n 25.)  As described above, the California and Federal regulations provide that in cases where the medical need is not foreseeable, "notice must be given as soon as practicable," and an employer may not deny leave because the employee failed to provide advance notice.  Cal. Code Regs. tit. 2, § 11091(a)(3)-(4).  Plaintiff argues that when

he was disciplined for failing to comply with the thirty-minute notice policy, his need for leave was unforeseeable due to an emergency medical condition, and he called in sick during his absence and submitted his request for CFRA-protected leave. (Opp'n 25.)

The FMLA regulations provide guidance on when a company's notice procedures are in line with the regulations, and when circumstances may justify an employee's failure to comply with the company's procedures:

> (c) Complying with employer policy. When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA–qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA– protected leave may be delayed or denied.

29 C.F.R. § 825.303(c). It is clear from the regulations that when the leave is not foreseeable, an employee must comply with the usual and customary notice requirements, absent unusual circumstances. Id. The regulation gives an example of where an employee is unable to follow the procedure because they cannot call the designated number because of a medical emergency, and the employee is excused from the employer's policy or procedure until they are able to comply with it. Id. If the employee does not follow the procedure, and no unusual circumstances had prevented the employee from complying, the protected leave may be denied or delayed. Id. Nothing in the regulation demonstrates that Defendants' policy violates the CFRA regulations. Rather, the regulations explicitly allow the employer to institute such procedures, and the regulations explicitly allow for Plaintiff to violate those procedures when medically necessary or other circumstances justify such violation. Thus, the Court does not find that Defendants' policy violates the CFRA. Rather, if relevant to the instant motion, the Court will determine whether Plaintiff was denied CFRA leave because of a violation of such policy, and whether evidence demonstrates unusual circumstances or medical urgencies prevented him from complying with Defendants' notice policy.

1          2.      The Parties' Arguments

2          The Court now turns to the parties' primary arguments concerning Plaintiff's CFRA

3    retaliation claim.  In sum, Plaintiff argues that multiple DARs issued between August of 2015

4    and the time of termination demonstrate a pattern of the employer improperly considering

5    protected absences which cumulatively and eventually led to Plaintiff's termination in violation

6    of the CFRA.  (Opp'n 8-13.)  Defendants argue there were no adverse actions taken against

7    Plaintiff after an absence was designated as protected, and that no protected absences were

8    considered in the termination decision.  (Mot. 16.)  Defendants argue the November 26, 2016

9    absence, even if it were later designated as protected after the decision to terminate Plaintiff, was

10   not necessary to the termination decision because it would not matter under the company policy

11   whether he was at six versus seven total infractions under the excessive absenteeism policy.

12   (Mot. 16.)  Defendants also argue that the Termination DAR cites three additional grounds for

13   the termination which Defendants argue none of which were the result of taking protected leave:

14   (1) the November 26, 2016 failure to notify within thirty minutes of an absence; (2) the

15   November 28, 2016 football pool incident; and (3) the November 27, 2016 wine chiller log

16   incident.  (Mot. 16-17.)

17        Plaintiff argues at length the circumstances here are "remarkably similar" to those in

18   Avila, and claims Defendants are advocating the same argument rejected by the Avila Court by

19   attempting to place the burden on Plaintiff to prove the manager responsible for the termination

20   subjectively knew that the employee's absences were legally protected.  (Opp'n 18-23.)  While it

21   does not appear Defendants were strictly advocating such position, the Court agrees that Avila

22   held that "[u]nlike in the FEHA situation, it is not necessary to show that a particular

23   management employee subjectively knew that an employee's absences were protected under

24   CFRA to establish a causal connection between an employee's CFRA leave and an adverse

25   employment action taken 'because of' the absences.' " Avila v. Cont'l Airlines, Inc., 165

26   Cal.App.4th 1237, 1260–61 (2008) (emphasis in original).  Like Plaintiff, Defendants discuss

27

28

Avila at length – and thus the Court turns to the facts in that case for further guidance.[7]

The employee in Avila was terminated for violating the employer's attendance policy which allowed for termination if the employee accrued seven or more "recordable" absences in a twelve-month period. Avila, 165 Cal.App.4th at 1245. Approved short-term disability and family medical leave absences were both nonrecordable incidents if the need was pre-arranged or documentation approved prior to the absence. Id. at 1244. Although the attendance policy did not explicitly state, an HR manager testified that absences due to emergency situations where prior approval was not practicable, could later be excused. Id. at 1244. Prior to termination, the Avila plaintiff had been hospitalized for pancreatitis and missed four days of work. Id. at 1244. He submitted two medical forms to his employer documenting his absences. The first form stated that plaintiff had visited a medical center and was unable to work for one day, and the second form stated that plaintiff had been admitted to the hospital for a few days and would be unable to work for five days. Id. The forms did not specify the reason for plaintiff's hospitalization and did not specify any restriction relating to plaintiff's ability to work after the five-day period. Id. at 1249. Only after his termination did plaintiff tell his employer the hospitalization was related to pancreatitis. Id. at 1244.

The appeals court upheld the trial court's grant of summary judgment on plaintiff's FEHA disability discrimination claim, finding that the medical forms submitted by plaintiff were insufficient to put the employer on notice that plaintiff suffered from a disability. Id. at 1249-1252. However, the appeals court viewed the CFRA retaliation claim differently. The lower court had granted summary judgment as to the CFRA claim on the ground that plaintiff's only evidence that he requested CFRA leave was that he called in sick. Id. at 1254. The appeals court confirmed that "calling in sick was, by itself, insufficient to put Continental on notice that he needed CFRA leave for a serious health condition," and would have upheld the summary judgment if that was in fact the only evidence in the record. Id. at 1255. However, the appeals court also considered testimony that the employee provided the medical forms by dropping them

---

[7] The Court also discussed Avila above in relation to Plaintiff's disability discrimination claim, supra Section IV(A)(1).

with the manager on duty, though he didn't remember who, and the form specified that he had been hospitalized for three days. Id. The appeals court found the issue on appeal as whether a reasonable jury could conclude that he: (1) had submitted the medical form to the employer; and (2) if so, whether that constituted a request for leave for a CFRA-qualifying purpose. Id. While the trial court did not find plaintiff's testimony to be substantial evidence, the appeals court accepted it as direct evidence that he provided the forms, as credibility regarding the testimony was for the jury. Id. at 1255-56. The appeals court found a reasonable jury could conclude plaintiff provided sufficient notice to put the employer on notice that he needed CFRA-qualifying leave, given the hospital form indicating plaintiff was hospitalized is sufficient to notify the employee of a serious medical condition, and such notice was as soon as practicable after the medical emergency, and thus sufficient under the regulations. Id. at 1257.

Plaintiff here highlights the Avila court's rejection of the employer's argument that because there was no evidence the decision-makers were personally aware of the protected status, the discharge could not have been "because of" the employee's exercise of the right to leave. Id. at 1258. As noted above, under California law, "it is not necessary to show that a particular management employee subjectively *knew* that an employee's absences were protected under CFRA to establish a causal connection between an employee's CFRA leave and an adverse employment action taken 'because of' the absences.' " Id. at 1260-61. However, that is not the precise argument that Defendants are proceeding on here. Rather, Defendants argue "[n]one of Plaintiff's approved FMLA absences are listed on the [Termination] DAR and none were considered in the termination decision." (Mot. 16.) In contrast to the facts here, in Avila, the court "concluded that plaintiff submitted sufficient evidence to raise a triable issue of fact whether the [hospital medical] forms under the circumstances constituted a request for CFRA-qualifying leave," and held that "[i]f the trier of fact concludes that plaintiff requested CFRA-qualifying leave, then [the employer's] admission that those absences were the cause of plaintiff's discharge is sufficient to establish a causal connection between plaintiff's exercise of his right to CFRA leave and his discharge," and thus found summary adjudication was improper. Avila, 165 Cal.App.4th at 1261 (emphasis added).

The Court will now turn to review the various DARs issued to Plaintiff prior to his termination that Plaintiff emphasizes in briefing.

3.    The Disciplinary Action Reports Preceding Plaintiff's Termination

The Court will now outline the DARs issued to Plaintiff prior to his termination. The Court notes that all of the DARs described below appear to have been signed by Plaintiff, a supervisor, and a witness.

a.    **The August 2015 DARs**

Two DARs issued on August 12, 2015. The first is a written warning for seven attendance infractions: (1) 2/2/2015-2/3/2015; (2) 4/13/2015-4/14/2015; (3) 4/24/2015; (4) 5/12/2015-5/13/2015; (5) 5/19/2015-5/22/2015; (6) 5/28/2015-6/7/2015; and (7) 8/4/2015-8/5/2015. (PMQ Dep., Ex. 10.) The second August 12, 2015 DAR is a written warning issued for eight attendance infractions, listing the same seven incidents in addition to: (8) 8/10/2015-8/11/2015. (PMQ Dep., Ex. 11.)

Plaintiff argues leave was approved for the August 2015 dates referenced in these two DARs, and also emphasizes that an August 12, 2015 DAR is referenced in the Termination DAR under the section related to previous discipline. (Opp'n 9.) The 2015 Attendance Calendar reflects these days were FMLA approved. (ECF No. 21-5 at 178.) Defendants do not dispute that these days were designated as protected, but argue that at the time these two DARs were issued, August 4, 5, 10, and 11, 2015, were not yet designated as protected, and after they were in fact designated as FMLA protected, these dates do not appear on any DAR. (ECF No. 25 at 3-4.) It is not clear what date Plaintiff called Liberty Mutual to request these dates be designated as protected, however it is an undisputed fact that effective September 1, 2015, Plaintiff was eligible for up to four days per month of FMLA/CFRA leave for absences caused by diabetes. (JUMF 8.) There is nothing in the record suggesting that Plaintiff was eligible for leave prior to this date, and thus the employer could not have been charged with knowledge of the leave at the time the DAR was issued. See Avila v. Cont'l Airlines, Inc., 165 Cal.App.4th 1237, 1260–61 (2008) (internal citations omitted) ("Once an employee has submitted a request for leave under CFRA, the employer is charged with knowledge that the employee's absences pursuant to the

leave request are protected, and may not thereafter take adverse employment action against the employee based upon—that is, 'because of'—those protected absences.").

Further, aside from the reference in the Termination DAR discussed below, Plaintiff has not presented any evidence demonstrating that after the absences were in fact designated as protected the employer counted those protected absences as attendance infractions in subsequent DARs or took any other adverse actions based on such protected absences. The 2015 Attendance Calendar appears to demonstrate that the DARs issued on August 12, 2015, were in fact the final DARs issued in 2015. (ECF No. 21-5 at 178.) In the 2016 Attendance Calendar, it appears all 2015 infractions are lined through, or stricken out, including for August 22, 2015. (PMQ Dep., Ex. 13.) In the 2016 Attendance Calendar, the first DAR listed for 2016 is an August 18, 2016 DAR, and the August 18, 2016 DAR does not reference any previous discipline where requested. (PMQ Dep., Ex. 15.) This is also in line with the undisputed fact that attendance infractions were counted on a rolling 12-month basis. (JUMF 6.)

b.    The August and September 2016 DARs

The next DARs that Plaintiff highlights in briefing were issued approximately one year later in August of 2016. The first, on August 18, 2016, is a written warning for six attendance violations: (1) 4/18/2016; (2) 5/31/2016-6/1/2016; (3) 7/5/2016-7/7/2016; (4) 7/11/2016-7/12/2016; (5) 7/25/2016-7/26/2016; and (6) 8/10/2016-8/12/2016. (PMQ Dep., Ex. 15.) The DAR signifies no previous discipline on this issue. (Id.) Under employee comments, the words "FMLA PENDING" are handwritten in. (Id.) According to the 2016 Attendance Calendar, FMLA was approved at some point for August 10, and 12, 2016, while for August 11, 2016, it is noted as "called FMLA." (PMQ Dep., Ex. 13.) This August 18, 2016 DAR also appears to have been referenced in the Termination DAR under the section related to previous discipline, as addressed below. (PMQ Dep., Ex. 7.)[8]

---

[8]  The Termination DAR in fact references the date "8/08/16," as a previous written warning. (PMQ Dep., Ex. 7.) This appears to have been a typo and appears to have been meant to reference the DAR issued on August 18, 2016. At deposition, Noriega was asked "[c]ould that have been August 18th, 2016?" and Noriega responded "[i]t could be." Plaintiff's counsel then stated "I'll represent to you, I can't find an August 8th, 2016, DAR," and Noriega responded "[i]t could be a typo." (PMQ Dep. 84:11-22.)

Two DARs issued on August 23, 2016. The first is a written warning for seven attendance infractions, listing the same six incident dates as the August 18, 2016 DAR, in addition to: (7) 8/22/2016. (PMQ Dep., Ex. 16.) The DAR confirms previous discipline referencing the August 18, 2016 DAR. (Id.) The second August 23, 2016 DAR is a written warning for violating the attendance policy requiring employees to call in thirty minutes prior to a missed shift because Plaintiff called in at 3:44 a.m. on August 22, 2016, for his shift that started at 3:45 a.m. (PMQ Dep., Ex. 17.) Both August 23, 2016 DARs have the words "FMLA PENDING" handwritten in under employee comments. (PMQ Dep., Exs. 16, 17.) According to the 2016 Attendance Calendar, FMLA was at some point approved for August 22, 2016. (PMQ Dep., Ex. 13.) The 2016 Attendance Calendar also has the notation: "FTN issued" 8/23/2016. (Id.) An August 23, 2016 DAR is referenced in the Termination DAR, as addressed below. (PMQ Dep., Ex. 7.)

A DAR written warning was issued on August 24, 2016, for eight attendance infractions, listing the same seven infractions as the first August 23, 2016 DAR as well as: (8) 8/24/2016-8/25/2016.[9] (PMQ Dep., Ex. 18.) The DAR references the August 18 and 22 DARs as previous discipline for attendance infractions. (Id.) Under employee comments, the words "FMLA PENDING" are handwritten in. (Id.) An associated DAR written warning was issued on August 26, 2016, for the failure to notify thirty minutes prior to the missed shift, stating Plaintiff called in at 6:48 a.m. on August 24, 2016, for his shift that started at 7:00 a.m. (PMQ Dep., Ex. 19.) Under previous discipline, the DAR references the thirty-minute failure to notify DAR issued on August 23, 2016. (Id.) Under employee comments, the words "FMLA PENDING" are handwritten in. (Id.) The 2016 Attendance Calendar states: "8/24-8/25 called out sick – FMLA Approved," along with the words "FTN within 30 min" denoted in red and italics. (PMQ Dep., Ex. 13.) The August 24, and August 26, 2016 DARs appear to be referenced in the Termination DAR as discussed below. (PMQ Dep., Ex. 7.)

A DAR written warning was issued on September 27, 2016, for a failure to notify

---

[9] The Court notes that 8/25/2016 is handwritten while the other dates are typed.

management that he was leaving early, stating that at approximately 5:15 a.m., Plaintiff "punched out and was leaving the winery until asked to come back and explain himself," and that Plaintiff explained he was leaving on FMLA. (PMQ Dep., Ex. 20.) The DAR indicates no previous discipline on this issue. (Id.) Under employee comments, Plaintiff appears to write he disagrees with this DAR, and states he did tell his supervisor and foreman that he did not feel good and that he needed to leave. (Id.) The 2016 Attendance Calendar signifies that FMLA was approved for September 27, 2016. (PMQ Dep., Ex. 13.) This DAR appears to be referenced in the Termination DAR, as discussed below.

Before proceeding to the next DARs issued in November of 2016, the Court will address the August and September 2016 DARs outlined above. Defendants proffer that "[a]ccording to documentation provided by Liberty Mutual to Constellation, on Monday, August 29, 2016, Plaintiff called Liberty and asked to designate August 10, 12, 22, 24, and 25 as FMLA-protected," which the Court finds to be undisputed.[10] (DUMF 7; PMQ Dep. Ex. 14.) It is also undisputed that "[o]n September 27, 2016, Plaintiff was issued a DAR for leaving work early without telling his supervisor, but Plaintiff was not given an attendance infraction for September 27, 2016 and Plaintiff's absences on August 10, 12, 22, 24 and 25 were not listed as infractions on the September 28 [sic], 2016 DAR."[11] (DUMF 8.)

Defendants further argue that August 10, 12, 22, 24, and 25, 2016, do not appear on any post-August 29, 2016 DARs, "including the December 2, 2016 Termination DAR." (ECF No. 25 at 5.) The Court finds it undisputed that these dates are not included as individual absences or infractions on any DARs in the record following August 29, 2016. Thus, even though Plaintiff seemingly did not call Liberty Mutual until nineteen days after the first absence on August 10, 2016, to designate such days as protected, it appears that once these absences were in fact

---

[10]  In response, Plaintiff states it is undisputed that Exhibit 14 "reflects Plaintiff may have called in August 29, 2016 . . . [h]owever, the fact asserted is not support [sic] by the deposition transcript cited. (ECF No. 24 at 5.) Based on the Court's review of the Liberty Mutual call log and associated testimony, the Court finds this fact to be undisputed. (PMQ Dep. 75:2-77:7, 123:23-124:5, Ex. 14.)

[11]  It appears the last reference to September 28 in this undisputed fact was a typo and was in fact meant to reference September 27, 2016.

eventually requested by Plaintiff to be designated as protected, the employer did not then count those protected absences as individual attendance infractions in the subsequent DARs issued after August 29, 2016, nor in the 2016 Attendance Calendar, nor in the Termination DAR.

However, as discussed below, the DAR issued August 23, 2016 is referenced in the November 28, 2016 DAR, and the August 24, 2016 DAR is referenced in both the November 28 and 29, 2016 DARs. An August 23 DAR and the August 24, 2016 DAR are also listed as previous discipline on the Termination DAR. (PMQ Dep., Ex. 7.)[12]

### c. The November 2016 DARs

The Court now turns to the remaining DARs Plaintiff highlights in briefing. Two DARs were issued on November 28, 2016. The first was issued for a failure to notify thirty minutes prior to Plaintiff's absence on November 26, 2016, and instead of a written warning, this DAR specifies the action being taken is suspension pending investigation. (PMQ Dep., Ex. 21.) The DAR states Plaintiff called in at 11:26 p.m. on November 26, 2016, for his shift that started at 11:45 p.m. (Id.) The DAR references written warning DARs issued on August 23, 2016, and August 24, 2016 as previous discipline for failure to notify thirty minutes prior to an absence. (Id.) The 2016 Attendance Calendar signifies FMLA was at some point approved for November 26, 2016. (PMQ Dep., Ex. 13.)

The second November 28, 2016 DAR, like the first, also specifies the action being taken is suspension pending investigation. (PMQ Dep., Ex. 22.) The DAR was issued for: "Attendance – 7 infractions," and specifies in the DAR that under the attendance policy:

> Attendance Policy Section 1.8 Company rights and Section 11.5 Prohibited Conduct – Excessive absenteeism is a serious performance problem. Excessive absences and failure to report absences in a timely manner will lead to discipline up to and including termination. An employee also may be disciplined whenever his or her attendances shows a suspicious pattern of absences. For example, absences adjacent to days off and holidays are suspect, as are repeated absences on the same day of the week, and absences for relatively minor complaints, such as headaches and stomachs. In considering whether an employee's absences are suspicious, the Company looks at all of the surrounding facts and circumstances.

---

[12] The Court notes that the reference to the August 23, 2016 DAR appears to be for the failure to notify thirty minutes prior to the missed protected absence on August 22. However, the only DAR issued on August 24, 2016 was for attendance infractions later deemed protected on August 29, 2016.

(Id.)  The following dates are listed as the seven infractions: (1) 4/18/2016; (2) 5/31/2016-6/1/2016; (3) 7/5/2016-7/12/16;[13] (4) 7/25/2016-7/26/2016; (5) 8/11/2016;[14] (6) 9/26/2016; and (7) 11/26/2016.  (Id.)  The DAR cites previous discipline referencing the DAR issued on August 24, 2016, as a written warning.  (Id.)  The 2016 Attendance Calendar signifies that FMLA was approved for November 26, 2016.  (PMQ Dep., Ex. 13.)  The November 26, 2016 absence, as well as the November 28, 2016 DAR, are referenced in the Termination DAR as discussed below.  (PMQ Dep., Ex. 7.)

A November 29, 2016 DAR suspended Plaintiff pending investigation.  (PMQ Dep., Ex. 23.)  The DAR noted eight attendance infractions, the same seven as the November 28, 2016 DAR as well as: (8) 11/28/2016.  (Id.)  The DAR notes previous discipline referencing only the DAR issued on August 24, 2016, which as noted above, was issued for an absence later deemed protected on August 29, 2016.  (Id.)  The 2016 Attendance Calendar appears to only signify that a DAR was issued on November 29, 2016, not whether it was a protected or unprotected absence infraction.  (PMQ Dep., Ex. 13.)  The Termination DAR does not explicitly reference the November 29, 2016 DAR, however does explicitly reference November 28, 2016 as the date Plaintiff requested to leave early because of winning the football pool, and was denied such request.  (PMQ Dep., Ex. 7.)

Having outlined the DARs issued to Plaintiff leading up to his termination, the Court now turns to the Termination DAR.

4.    The References to Protected Leave in the Termination DAR Establish a Prima Facie Case of CFRA Retaliation

The Termination DAR was issued on December 2, 2016.  (PMQ Dep., Ex. 7.)  The first basis for the termination is seven absences described as showing "an adverse pattern of excessive absenteeism (absences around holidays, scheduled days off, and weekends)."  (Id.)  The

[13]  The Court notes that the DAR issued on August 24, 2016, previously listed 7/5/2016-7/7/2016, and 7/11/2016-7/12/16, as two separate infractions.  (PMQ Dep., Exs. 18, 22.)

[14]  The Court notes that the DAR issued on August 24, 2016, previously listed 8/10/2016-8/12/2016 as one infraction, as well as 8/22/2016 as one infraction, and 8/24/2016-8/25/2016 as one infraction, while this DAR now only references 8/11/2016 as the only infraction in August of 2016.  (PMQ Dep., Exs. 18, 22.)

following dates as seven separate incidents: (1) 4/18/2016; (2) 5/31/2016-6/1/2016; (3) 7/5/2016-7/12/16; (4) 7/25/2016-7/26/2016; (5) 8/11/2016; (6) 9/26/2016; and (7) 11/26/2016. (Id.) Second, the DAR states that "[o]n 11/26/16 you did not report your absence within 30 minutes of starting your shift, resulting in a Failure to Notify." (Id.) Third, the DAR states "[o]n 11/28/16, at the start of your shift, you requested a de-crew day and stated you had won money in a football pool and did not need to work that day. Your request for decrew was denied and you went home sick shortly after." (Id.) Fourth, the DAR states "[o]n 11/27/16, you failed to follow [standard operating procedure and] were issued a DAR for falsifying information on the Chiller log." (Id.)

Except for the November 26, 2016 date, none of the specific dates listed as the basis for the excessive absence determination in the first page of the Termination DAR reference any dates that FMLA is noted as approved on the 2016 Attendance Calendar.[15] On the second page of the Termination DAR, where the form asks whether the employee was previously disciplined on similar issues, the DAR does in fact note the following dates identified as written warnings: 1) 8/12/2015; 2) 8/8/2016;[16] 3) 8/23/2016; 4) 8/24/2016; 5) 8/26/2016; and 6) 9/27/2016. (Id.) The Termination DAR also notes "[m]ultiple other warnings in file around attendance and performance." (Id.) As discussed above, the August 12, 2015 DAR in fact was issued because of an absence that was later deemed FMLA protected. (PMQ Dep., Exs. 9, 11.) The August 18, 2016 DAR was originally issued for absences on August 10, 11, and 12, 2016, however according the 2016 Attendance Calendar, August 10 and 12 were designated as FMLA protected, while August 11, 2016 remained apparently unprotected, and the Calendar reflects a notation stating "called FMLA." Two August 23, 2016 DARs appear in the record, one for an absence

---

[15] As discussed above, Plaintiff was issued a DAR on September 27, 2016. The Termination DAR identifies September 26, 2016 as one of the absences identified as collectively showing an adverse pattern of excessive absences. The 2016 Attendance Calendar does not have any notation for September 26, 2016, though September 27, 2016 is blacked out as FMLA approved. It is not clear why September 26, 2016 is not identified as an absence, protected or otherwise, on the 2016 Attendance Calendar, and yet appears as an attendance infraction on the Termination DAR. Plaintiff, in briefing, does not contend September 26, 2016 was a protected date or improperly included in the Termination DAR as a factor in Plaintiff's termination.

[16] As noted above, the August 8 reference appears to have been a typo and should refer to the DAR issued on August 18, 2016.

later designated as protected, and one for failure to notify of the absence thirty minutes prior to the shift, and it is not clear which DAR the previous discipline is referencing. The DAR issued August 24, 2016 for attendance infractions was based on absences that were later designated as protected. The August 26, 2016 DAR is for the failure to notify thirty minutes prior to the shift on August 24, 2016, an absence that was designated as FMLA protected. The September 27, 2016 DAR is for failing to notify the employer that Plaintiff was leaving early, and the date was later designated as FMLA protected.

Noriega testified that in determining that Plaintiff had excessive poor attendance, the company would have relied on previous discipline:

> Q     Let's focus on excessive poor attendance. What information did the company rely on to come to the conclusion that he had excessive poor attendance?
>
> A     The attendance policy, Exhibit 6, the call-off records, and any previous discipline issued for excessive attendance problems.

(PMQ Dep. 43:24-44:4.) Noriega also testified that he would have looked at the 2016 Attendance Calendar when deciding to terminate Plaintiff. (PUMF 23; PMQ Dep. 73:20-74:15, Ex. 13.)[17]

Defendants proffer that it is undisputed that it wasn't until after Plaintiff was told his employment was ending that Plaintiff asked Liberty to apply FMLA to dates he had been absent,

---

[17]  The date that the 2016 Attendance Calendar was last updated is in dispute between the parties. Noriega indicated in deposition that the attendance calendar was in the same form as the time that Plaintiff was still employed, however the Court cannot say such testimony is unequivocal. When asked the last time the calendar would have changed, Noriega answered: "It would have been when [Plaintiff] was still employed." (PMQ Dep. 64:6-8.) Counsel then asked: "So after [Plaintiff] was terminated there would be – no one would have changed the 2016 attendance calendar?" (PMQ Dep. 64:9-10.) The question was objected to for calling for speculation as to what the administrative staff would do, and Noriega then answered: "Yeah, if there is any activity, then, again, the admin staff would note that on the calendar." (PMQ Dep. 64:11-14.) In a declaration submitted with Defendants' motion, Noriega states that the attendance calendar were updated contemporaneously in the ordinary course of business, and states that he "is aware that the copy of the 2016 calendar for Plaintiff Velasquez . . . was last updated after Plaintiff's last day of work at Constellation." (Noriega Decl. ¶ 10.) Noriega also declares that "[a]fter already making the decision to terminate Plaintiff, Constellation learned that on November 29, 2016, Plaintiff Velasquez called Liberty Mutual and asked that his absence on November 26, 2016 be retroactively designated as FMLA." (Noriega Decl. ¶ 8.) However, even if the decision to terminate Plaintiff was made prior to Plaintiff's request to apply protected leave to the November 26, 2016 absence, the Termination DAR was not issued until after November 29, 2016, as discussed below. Although such facts, if established, would bolster Defendants' position, they are not necessary to the Court's decision to grant summary judgment in favor of Defendants as explained further in this order.

including November 26, 2016. Plaintiff responds this is disputed arguing Plaintiff requested FMLA on these dates prior to termination, highlighting that on November 29, 2016, Plaintiff was suspended through the issuance of a DAR (PMQ Dep. Ex. 23), that the Liberty call records demonstrate that on November 29, 2016, Plaintiff called to designate November 26, 2019, and November 28, 2016, as protected (PMQ Dep. Ex. 14), and then Plaintiff was not terminated until December 2, 2016. Defendants respond that this fact is "established by Plaintiff's unequivocal admission" during deposition that he called Liberty after he was told his employment was ending to apply leave to dates he had already been absent. (ECF No. 24 at 8.) Plaintiff's relevant deposition testimony is as follows:

> Q        And you don't know how much leave was approved?
>
> A        The last time I checked – before I was fired, I believe that I had four days left. I don't know if it was reduced or not, but, by then, I had been fired.
>
> Q        So you checked after you'd been fired?
>
> A        That day, I called after – it was actually that very day the supervisor named Juan Cevas, when he was walking me all the way out, he said, "You know what, Mauricio? You could call FMLA and get this all settled, and maybe they will call you back to work."
> But at the time, he took away from me my employee ID card, my radio. He took everything away from me.
>
> Q        So on your last day actually working at Mission Bell, Juan Cevas is the one who walked you out of the building?
>
> A        Yes.
>
> Q        And he suggested you could call Liberty?
>
> A        Yes . . . .
>
> Q        And that was after you had been told your employment was ending?
>
> A        Yes.
>
> Q        And after that, did you call Liberty?
>
> A        It was then, yes, that I called, and I asked how many FMLA days did I have left . . .
>
> . . . Q        And did you ask them to apply FMLA days to days you had already been absent?

> A    Yes, because I had used two.  That day, when I was fired, that day when I was going to use another FMLA day, would have been two.  And then I had just two days left.

(Pl. Dep. 185:21-187:17.)  According the DAR, Plaintiff was only suspended on November 29, 2016, and it is not clear based on this testimony whether perhaps Plaintiff viewed the events of the day he was suspended as essentially being "told his employment was ending," or even explicitly told he was being terminated.  (DUMF 13.)  However, Plaintiff was not terminated until December 2, 2016, a date which according to the Liberty call logs, was after he called Liberty to designate November 26 and 28, 2016, as protected absences.  (PMQ Dep., Ex. 14.)  Further, the fact that Plaintiff called Liberty prior to his termination is essentially conceded by Defendants in their next proffered undisputed fact which states: "Plaintiff was terminated on December 2, 2016, at which time Constellation was unaware that he had called Liberty on November 29 and Constellation was unaware that Plaintiff was asking that November 26, 2016 be designated as FMLA leave."  (DUMF 14.)[18]  As the Court found above, Defendants rely on the Liberty call logs to establish Plaintiff called to designate protected leave for other dates, and here, taking the facts in favor of Plaintiff as the non-moving party, the Court similarly must rely on the dates in the call records and the date of the Termination DAR rather than Plaintiff's somewhat ambiguous testimony.  Additionally, Noriega's declaration concerning his knowledge would not change this analysis as "[o]nce an employee has submitted a request for leave under CFRA, the employer is charged with knowledge that the employee's absences pursuant to the leave request are protected, and may not thereafter take adverse employment action against the employee based upon—that is, 'because of'—those protected absences."  Avila v. Cont'l Airlines, Inc., 165 Cal.App.4th 1237, 1260–61 (2008) (internal citations omitted).

For Plaintiff to establish a prima facie case of retaliation under the CFRA, Plaintiff must show an adverse employment action because of the exercise of the right to leave.  Such "causal link element may be established by an inference derived from circumstantial evidence," and Plaintiff "can satisfy his or her initial burden under the test by producing evidence of nothing

---

[18]  Plaintiff disputes this fact given the 2016 Attendance Calendar reflects FMLA was approved for November 26 and 28, 2019, and proffers that the 2016 Attendance Calendar was not changed after Plaintiff was terminated.  (ECF No. 24 at 9.)  The Court addressed this disputed fact supra footnote 17.

more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." McRae v. Dep't of Corr. & Rehab., 142 Cal.App.4th 377, 388 (2006) (citing Morgan v. Regents of Univ. of Cal., 88 Cal.App.4th 52, 69 (2000)). As explained above, because the Termination DAR does reference November 26, 2016, as an attendance infraction, and references prior disciplinary action reports based on leave designated as protected, albeit after they were issued, but before termination, Plaintiff has established a prima facie case of CFRA retaliation. See Sandell v. Taylor-Listug, Inc., 188 Cal.App.4th 297, 310 (2010) ("The prima facie burden is light; the evidence necessary to sustain the burden is minimal.")

Given Plaintiff has established a prima facie case of CFRA retaliation, the Court will now determine whether Defendants have presented evidence of legitimate non-retaliatory reasons for the termination.

   5.   Defendants have Proffered Legitimate Non-Retaliatory Reasons for Termination and Plaintiff cannot Demonstrate Pretext

"Once an employee establishes a prima facie case [of CFRA retaliation], the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." Faust v. California Portland Cement Co., 150 Cal.App.4th 864, 885 (2007) (quoting Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005) (internal quotation marks omitted)). "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to prove intentional retaliation." Id. (quoting Yanowitz, 36 Cal.4th at 1042 (internal quotation marks omitted)). Plaintiff can rebut Defendants' proffer through either direct or circumstantial evidence of pretext, however, where the evidence is circumstantial, it must be "specific" and "substantial" and "tend[] to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." James v. Dependency Legal Grp., 253 F. Supp. 3d 1077, 1096 (S.D. Cal. 2015) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998)).

///

### a.    Plaintiff's Excessive Absenteeism is a Legitimate Basis for Termination

As outlined above, the DARs issued do not evidence a pattern of Defendants attempting to discipline Plaintiff for protected absences, but rather a pattern of Plaintiff repeatedly taking absence from work and then retroactively designating such dates as protected, and the employee repeatedly adjusting the attendance calendar and removing such infractions from the employee's attendance record as the absences were later designated as protected.  It is true that the Termination DAR makes reference to previous DARs that were issued at a time when the absences were not yet protected in the secondary portion of the Termination DAR for listing previous discipline.  However, aside from the November 26, 2016 date, which was not deemed protected until November 29, 2016, after Plaintiff found out he was suspended and arguably not until after Plaintiff found out his employment was to be terminated, no other protected absences were counted as infractions as reflected on the Termination DAR and in the 2016 Attendance Calendar.  Under the attendance policy, the threshold number of absence infractions that may automatically result in termination is nine (9).  (PMQ Dep., Ex. 6.)  The attendance policy also provides that:

> Excessive absences and failure to report absences in a timely manner will lead to discipline up to and including termination.  An employee also may be disciplined whenever his or her attendance shows a suspicious pattern of absences.  For example, absences adjacent to days off and holidays are suspect, as are repeated absences on the same day of the week, and absences for relatively minor physical complaints, such as headaches and stomachs.  In considering whether an employee's absences are suspicious, the Company looks at all the surrounding facts and circumstances.

(PMQ Dep., Ex. 6.)  Thus, whether Plaintiff was at six or seven infractions was not a determinative factor for termination under the attendance policy's cutoff of nine absences, as the first basis for termination in the DAR is for excessive absenteeism, not reaching the cutoff of nine infractions.  The fact that November 26, 2016, was included as the seventh infraction on the Termination DAR was not necessary for termination based on the excessive absenteeism policy, which as described, looks at the totality of circumstances surrounding the employee's record of absences.  Thus, even though the inclusion of November 26, 2016, and reference to previous DARs in the previous discipline section of the Termination DAR allows Plaintiff to establish a

prima facie case of retaliation under the CFRA, the remaining unprotected absences cumulatively present a pattern of excessive absenteeism under the company's attendance policy, and thus is a legitimate non-discriminatory reason for termination based on absences that Plaintiff has not disputed are unprotected.

Additionally, the attendance policy states that the employer "reserves the right to take steps different from those described in this guideline, including omitting warnings and proceeding immediately to termination, whenever the Company determines that such a variation would be appropriate based on all of the surrounding facts and circumstances, including the particular conduct involved, and the employee's record of prior performance, behavior problems, and safety violations." (PMQ Dep., Ex. 6.) Further, even if the inclusion of the November 26, 2016 date created a triable issue on that reason for termination, Plaintiff has not countered, with specific and substantial evidence, the other three reasons for Plaintiff's termination which are listed on the Termination DAR.

### b. Plaintiff's Three Failure to Notify Violations are a Legitimate Basis for Termination

Under the attendance policy, the third occurrence of failing to call in absences thirty minutes prior to the start of the shift can result in termination. (PMQ Dep., Ex. 6.) Plaintiff received a failure to notify DAR on November 28, 2016, for failing to call in thirty minutes prior to his missed shift on November 26, 2016, and this was incorporated into the Termination DAR as a basis for termination. Plaintiff also received a DAR on August 23, 2016, for his failure to notify on August 22, 2016, and a DAR on August 26, 2016 for his failure to notify on August 24, 2016. Plaintiff did not designate November 26, 2016, as protected until November 29, 2016, and did not designated the August dates as protected until August 29, 2016. It is undisputed that Plaintiff violated these policies, and Plaintiff has not presented evidence he could not comply with the policy because of an emergency or unusual circumstances. See 29 C.F.R. § 825.302(d) ("An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."). Rather, in his opposition, Plaintiff only argues that: (1) "Constellation has produced zero 'call

off' records that could show Plaintiff called in for any reason other than a medical emergency;" and (2) "Because Plaintiff's need for leave was unforeseeable due to an emergency medical condition, and because Plaintiff both called in sick during his absence and submitted [his] requests to Defendant for CFRA-protected leave . . . a reasonable trier of fact could also conclude that plaintiff requested leave 'as soon as practicable.' " (Opp'n 25-26.)  This is not specific and substantial evidence demonstrating that Defendants' disciplinary action based on Plaintiff's failure to follow company policy was a pretext for retaliation.

The company PMQ testified it has discretion not to write someone up for a "failure to notify," and will review the situation on a "case-by-case basis."  (PUMF 2.)  Plaintiff has not presented any evidence that he disputed the failure to notify DARs through his union or otherwise.  (PMQ Dep. 122:21-122:4, 128:3-13.)  "If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity," and "[t]he relevant inquiry is whether the [employer] *believed* [the employee] was guilty of the conduct justifying discharge."  Joaquin v. City of Los Angeles, 202 Cal.App.4th 1207, 1223 (2012) (quoting Richey v. City of Indep., 540 F.3d 779, 784 (8th Cir. 2008)) (applying analysis to FEHA retaliation claim).  "[A] plaintiff seeking to avoid summary judgment under the McDonnell Douglas framework must demonstrate more than a genuine issue of material fact as to whether the employee violated workplace rules," and "must show a genuine issue of fact about whether the employer acted based on an intent to retaliate rather than on a good faith belief that the employee violated a workplace rule."  Id.

Plaintiff has not presented specific and substantial evidence demonstrating that Defendants' disciplinary actions taken in response to Plaintiff's failure to notify of his absences in compliance with company policy were a pretext for CFRA retaliation.

### c.     The Football Pool Incident

The Termination DAR also notes the following incident: "On 11/28/16, at the start of your shift, you requested a de-crew day and stated you had won money in a football pool and did no need to work that day."  Defendants argue that on November 28, 2016, Plaintiff did not feel

well, but rather than stay home and use his FMLA leave, he instead drove to work, and after he learned he won some football pool money, he requested to de-crew which would not count as a sick day or FMLA leave day, and after denied, decided to stay and work. Defendants argue that after Plaintiff learned he actually won the big money prize, he decided to use his FMLA leave.

The Court has reviewed Plaintiff's testimony regarding the incident and finds that material facts are in dispute regarding the events of that day. Defendants cite deposition testimony to argue that Plaintiff's leaving early was not caused by diabetes medication, however the Court will not attempt to determine at this stage if FMLA was in fact approved for an illegitimate reason on this day. November 28, 2016 was in fact designated as FMLA protected as reflected on the 2016 Attendance Calendar, and while Defendants state no attendance infraction was counted for that day, they concede a DAR was issued for leaving sick after his de-crew was denied and after he won the football pool. (Mot. 15.) "Once an employee has submitted a request for leave under CFRA, the employer is charged with knowledge that the employee's absences pursuant to the leave request are protected, and may not thereafter take adverse employment action against the employee based upon—that is, 'because of'—those protected absences." Avila v. Cont'l Airlines, Inc., 165 Cal. App. 4th 1237, 1260–61, 82 Cal.Rptr.3d 440, 459–60 (2008) (internal citations omitted). The mere mention of a non-covered reason, such as "vacation," "does not render the notice insufficient, provided the underlying reason for the request is CFRA-qualifying, and the employee communicates that reason to the employer." Cal. Code Regs. tit. 2, § 11091(a)(1) (emphasis added)

Thus, the Court cannot find as a matter of law that the November 28, 2016 incident was a legitimate non-retaliatory basis for termination because Plaintiff has demonstrated specific and substantial evidence demonstrating disputed facts regarding this event. However, the other reasons for termination provided in the Termination DAR establish independent reasons for the termination, including the wine chiller document falsification incident, which the Court now turns to.

///

///

**d.    The Wine Chiller Document Falsification Incident is a Legitimate Basis for Termination**

The Termination DAR also states that: "On 11/27/16, you failed to follow SOP.  You were issued a DAR for falsifying information on the chiller log." (PMQ Dep. Ex. 7.)  It is undisputed that when Plaintiff completes his chiller log as part of his work duties, Plaintiff circles the numbers of certain chillers to document that those chillers were "running, that they are in operation." (DUMF 10.)  On November 27, 2016, Plaintiff did not turn on chillers 1, 12, and 19 as documented on the chiller log he turned into Constellation.  (DUMF 11.)  The Court has reviewed the relevant deposition testimony and finds it consistent with the employer's determination that Plaintiff failed to complete his job duties and failed to accurately document completion of such job duties as required under company policy.  (Pl. Dep. 139:14-140:6, 145:12-25; Putnam Dep. 40:23-41:24, 42:3-16; 52:15-53:4; PMQ Dep. 96:15-97:4.)

Plaintiff does not put forth any specific or substantial evidence to dispute the grounds for termination stemming from the alleged wine chiller form documentation incident.  Plaintiff only puts forth testimony that Noriega doesn't recall following up with anybody regarding the falsifying of information in the wine chiller log, and that Plaintiff's supervisor Mehlhoff does not recall talking to anyone about the chiller log incident.  (Opp'n 14.)  These facts do not change the analysis and do not satisfy Plaintiff's obligation to provide specific and substantial evidence to demonstrate pretext underlying Defendants' proffered legitimate non-retaliatory reason for the termination.

It is undisputed that "[t]he CBA applicable to Plaintiff's employment by Constellation states that the first instance of falsifying a company record will result in dismissal." (JUMF 7.)  Thus, this legitimate reason for termination, standing alone and unrebutted by Plaintiff, is sufficient to justify Plaintiff's termination and compels the Court to award summary judgment in favor of Defendants on the CFRA retaliation claim.

Again, "[A] plaintiff seeking to avoid summary judgment under the McDonnell Douglas framework must demonstrate more than a genuine issue of material fact as to whether the employee violated workplace rules," and "must show a genuine issue of fact about whether the

employer acted based on an intent to retaliate rather than on a good faith belief that the employee violated a workplace rule." Joaquin v. City of Los Angeles, 202 Cal.App.4th 1207, 1223 (2012) (quoting Richey v. City of Indep., 540 F.3d 779, 784 (8th Cir. 2008)) (applying analysis to FEHA retaliation claim). "Speculation about an employer's motives is not substantial responsive evidence." Brown v. Constellation Brands, Inc., No. 1:17-CV-00590-BAM, 2018 WL 4849656, at *7 (E.D. Cal. Oct. 4, 2018) (citing Cucuzza v. City of Santa Clara, 104 Cal.App.4th 1031, 1038 (2002)). "Conclusory assertions unsupported by details or facts, coupled with misrepresentations of innocuous statements, are insufficient to create a genuine issue of material fact." James v. Dependency Legal Grp., 253 F. Supp. 3d 1077, 1098 (S.D. Cal. 2015). It is true that it is "not the province" of the Court "to spin such evidence in an employer's favor when evaluating its motion for summary judgment [as] all inferences must be drawn in favor of the non-moving party." Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1129 (9th Cir. 2000)). However, even affording Plaintiff all inferences draw in his favor, the Court finds no reasonable jury could determine that Plaintiff has submitted substantial and specific evidence to rebut Defendants' multiple proffered legitimate and non-retaliatory business reasons for terminating Plaintiff's employment.

In sum, although Plaintiff has met his burden of establishing a prima facie case of CFRA retaliation, Defendants have submitted evidence of three separate legitimate and non-retaliatory reasons for the termination which Plaintiff has not met his burden in rebutting.[19] Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 362 (2000) ("summary judgment for the employer may thus be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred.") Accordingly, Defendants' motion for summary judgment on Plaintiff's CFRA retaliation claim shall be granted.

---

[19] Such reasons are collectively bolstered by the attendance policy which states that the employer: "reserves the right to take steps different from those described in this guideline, including omitting warnings and proceeding immediately to termination, whenever the Company determines that such a variation would be appropriate based on all of the surrounding facts and circumstances, including the particular conduct involved, and the employee's record of prior performance, behavior problems, and safety violations." (PMQ Dep., Ex. 6.)

### D.    Plaintiff's Declaratory Relief Claim

Plaintiff's fourth cause of action is for declaratory relief under California Code of Civil Procedure section 1060, seeking a declaration that Plaintiff was subjected to adverse treatment and adverse employment actions in violation of the FEHA and CFRA.  (Compl. 16.)  This cause of action is based on the same factual and legal allegations as the disability discrimination and retaliation causes of action.  (Compl. ¶¶ 50-53.)  Defendants move for summary judgment on this claim arguing that because it is based on the same facts and legal allegations as the underlying claim declaratory relief is unnecessary.

This is not the rare case, as Plaintiff argues, where declaratory relief may be necessary because of the unavailability of monetary damages in a mixed-motive discrimination case.  See Harris v. City of Santa Monica, 56 Cal. 4th 203, 233, 294 P.3d 49, 66 (2013) (finding declaratory relief appropriate where monetary damages unavailable but discrimination was a substantial motivating factor behind termination).  Because the Court has granted summary judgment as to Plaintiff's underlying claims for disability discrimination, FEHA retaliation, and CFRA retaliation, Plaintiff's claim for declaratory judgment shall likewise be dismissed.

### E.    Plaintiff's Claim for Punitive Damages

Plaintiff seeks punitive damages in relation to his FEHA disability discrimination claim, his CFRA retaliation claim, and his FEHA retaliation claim.  (Compl. 12-16.)  Punitive damages are available for such claims.  See Rezvan v. Philips Elecs. N. Am. Corp., No. 15-CV-04767-HSG, 2016 WL 8193160, at *11 (N.D. Cal. Dec. 15, 2016) (citing Commodore Home Sys., Inc. v. Superior Court, 32 Cal.3d 211, 220-21 (1982)); Taylor v. Trees, Inc., 58 F. Supp. 3d 1092, 1104 (E.D. Cal. 2014).

However, because the Court has granted summary judgment as to Plaintiff's underlying claims for disability discrimination, FEHA retaliation, and CFRA retaliation, Plaintiff's claim for punitive damages shall likewise be dismissed.  See Sako v. Wells Fargo Bank, N.A., No. 14CV1034-GPC JMA, 2015 WL 5022307, at *21 (S.D. Cal. Aug. 21, 2015) (dismissing claim for punitive damages after granting summary judgment on underlying FEHA cause of action).

///

## V.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Defendants' motion for summary judgment (ECF No. 18) is GRANTED; and

2.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendants Constellation Brands US Operations, Inc., and Constellation Brands, Inc.

IT IS SO ORDERED.

Dated:   **June 27, 2019**

UNITED STATES MAGISTRATE JUDGE